## Swisshelm's Appeal.

56   475
173   99
173   108

1. A married woman purchased an undivided interest (subject to liens) in land of which her husband was a joint owner; her interest was sold under the liens and bought by the husband at sheriff's sale. *Held*, that the effect of his purchase was to preserve the estate for the wife.

2. The husband and wife being owners of the same property and also on account of the marital relation, occupied towards each other a fiduciary relation of the most confidential character, which required the utmost degree of good faith between them.

3. The husband procured the control and practical ownership of the liens and sold out and purchased his wife's interest; he was practically vendor and vendee.

4. After his purchase they were divorced; this made no other change than to free her and her estate from the husband's control.

January 16 and 17th 1868, at Philadelphia. Before Thompson, C. J., Read, Agnew and Sharswood, JJ. Strong, J., at Nisi Prius.

Appeals from decrees of the Court of Common Pleas of *Allegheny county*. In equity. Nos. 9 and 25 to October and November Term 1868.

The proceeding was commenced January 4th 1867, by a bill in which Jane G. Swisshelm was the plaintiff, and James G. Swisshelm, George McCague, Jacob S. Newmeyer, John S. Davison, James S. King and Frances his wife, were defendants.

The bill alleges:—

1. That John Swisshelm by his will, proved December 3d 1838, gave to his wife Elizabeth, his real estate for life, and at her death to his four sons, James, Samuel, William and Henry; if either of his sons should die without issue before he was entitled to receive his share, it should go to the surviving sons.

2. That the testator's wife Elizabeth was then living, and the son Samuel had·died in 1840 without issue and without having aliened his interest in the devised real estate.

3. That Kramer & Rahm, on the 5th of December 1855, obtained three judgments against William Swisshelm, one of the sons.

4. That on the 22d of February 1856, William conveyed his interest in said real estate, which contained about 162 acres of land, to the plaintiff, and that the purchase-money was paid out of her separate estate.

5. That under a venditioni exponas, issued out of the District Court of Allegheny at the request of James Swisshelm, then the husband of the plaintiff, all the interest of William Swisshelm in said real estate was sold to James Swisshelm for $580, being the amount of the debts, interest and costs of the above-mentioned judgments and the sheriff's deed for the said interest was acknowledged January 2d 1858.

6. That James Swisshelm purchased said real estate with a knowledge of the plaintiff's title, and for the purpose of defeating it.

7. That of October Term 1860 of the Court of Common Pleas of Allegheny county, on April 6th 1861, James Swisshelm obtained a divorce a *vinculo matrimonii* from the plaintiff, since which time she has resided in Minnesota.

8. That before the decree of divorce the plaintiff joined James Swisshelm, her husband, in a conveyance of 20 acres of the above described land to R. H. Palmer, and that since the decree James Swisshelm, with his mother, had executed divers deeds for various portions of the remainder of said real estate, without authority from the plaintiff and with notice upon record of her title ; James and his mother professing to convey the whole title in fraud of the plaintiff's rights :

The conveyances are : March 1st 1859, to Alexander Gordon ; March 20th 1860, to George McCague ; March 23d 1863, to James S. King ; May 5th 1864, to Frances C. King, wife of James S. King ; September 26th 1864, to John S. Davison ; October 15th 1864, to Jacob S. Newmeyer.

9. That the plaintiff was entitled to one undivided third of the said tract of land, including the portions that James Swisshelm had contracted to convey, which he, well knowing her title, wrongfully claimed to hold for his own use ; and that he conveyed to the other defendants, they knowing her title.

The bill prayed that James Swisshelm be enjoined from selling and conveying any part of the said real estate, and that he be ordered to convey the one-third of so much as remains to the plaintiff; that the other defendants be ordered severally to convey to her one-third of the land conveyed to them, and for further relief.

James Swisshelm demurred to the bill:—that Elizabeth Swisshelm should have been a party defendant ; that the bill was multifarious ; that there was a remedy at law and for want of equity. The other defendants also demurred: all the demurrers were overruled.

He then answered, admitting the first three paragraphs of the bill. He admitted the conveyance by William Swisshelm, as averred in the fourth paragraph ; but denied that it was made with his knowledge and consent, or that it was paid for out of the plaintiff's separate estate ; and averred that the conveyance was voluntary and without consideration, for the purpose of defeating the claims of Kramer and Rahm, and other creditors of William ; he denied that the deed was valid, and conveyed any title to the plaintiff. He admitted that he purchased William's interest under the venditioni exponas, as mentioned in the fifth paragraph ; but denied that the writ was issued and the sale procured at his

request; and averred that by the sale a good title to the land vested in him. He denied that his purchase of William's interest was made with a knowledge of the plaintiff's title. He admitted the divorce, but denied that the plaintiff had since resided in Minnesota, and averred that she had been for a considerable time a resident of Allegheny county. He admitted the conveyances mentioned in paragraph eighth of the bill; but denied that they were made with knowledge of the plaintiff's title, or in fraud of her rights. He denied the plaintiff's title to any of the land or its proceeds, and all fraud, &c.

The answers of the other defendants were, for the most part, substantially the same as James Swisshelm's.

McCague in addition averred, that he was a bonâ fide purchaser for a valuable consideration without notice of William's conveyance to the plaintiff, or of any fraud or improper acts on the part of his vendors.

The Kings and Newmeyer in addition averred: that the plaintiff knew personally since 1866, that they and their alienees were expending large sums of money in improving the land bought by them in ignorance of her claim, and that she withheld from them all knowledge of her title; that the conveyance to Palmer was for a part of the interest of William, for his sole benefit—the proceeds were paid to him all with the knowledge of the plaintiff; they denied that they had any knowledge, actual or by record of the plaintiff's title, or of William's deed to her, until August or September 1866. They denied the plaintiff's title to any of the land, and averred that they were bonâ fide purchasers for valuable consideration without notice, and without any knowledge of any intention of James inconsistent with equity, or in fraud of the plaintiff's rights, and that she could have ample remedy without recourse to the property conveyed to them.

Davison answered in addition: that he was a bonâ fide purchaser for a valuable consideration, without notice of William's convey-ance to the plaintiff, or of fraud or improper acts of James; that the transactions upon which the plaintiff based her title occurred five years before her bill was filed, and she was barred by the Act of April 22d 1856. The plaintiff filed a general replication, and an examiner was appointed.

Afterwards, upon the petition of William Anderson and John Noss, they were added as defendants, and filed an answer adopting the answer of King and Newmeyer, and further averring that they were in possession as equitable owners of 6 acres of the land conveyed by William to the complainant, under an article of agreement with James made in 1865; that they had expended a large amount of money in improvements; that they yet owed $1800 on account of the purchase-money, having already paid $1800 to James; that the plaintiff knew of their purchases, and

that the improvements were made in ignorance of her claim, and withheld knowledge from them of her title.

In addition to the facts admitted by the pleadings, the testimony reported by the examiner showed—by the death of her mother the plaintiff became entitled to certain real estate in Pittsburg and Wilkinsburg which was sold, and she became the owner of one or more newspapers, which she conducted with her husband's knowledge, but with which he had no connection. His brother William was connected with her in the paper as clerk and partner.

On the 9th of July 1855 William P. Baum recovered a judgment against William Swisshelm. On December 5th Kramer & Rahm recovered three judgments against him.

On the 22d of February 1856 he conveyed to the plaintiff his interest in the real estate devised by his father, the consideration mentioned in the deed being $2000. There was evidence that William was indebted to the plaintiff on account of the newspaper and on other accounts, and that he had conveyed his interest in his father's real estate in consideration of this indebtedness. On the 13th of March 1856, Thomas Mellon, Esq. (afterwards judge), recovered judgment against William Swisshelm on a bond which was due before his conveyance to the plaintiff. Mr. Mellon issued an execution on this judgment and made a levy, but the proceedings were stayed in consequence of the judgment being subsequent to the conveyance. Mr. Mellon afterwards purchased the Kramer & Rahm judgments, issued execution on one of them, and had William's interest in the land sold by the sheriff. It was bought December 28th 1857 by James, for $580, the amount of the debt, interest and costs on the Baum judgment and the three Kramer & Rahm judgments: the sheriff's deed was acknowledged January 2d 1858. James afterwards paid to Mr. Mellon the *whole* of his claim against William, including his own judgment.

The plaintiff went to Minnesota about 1857, and whilst there was informed that William's interest in the land was advertised for sale by the sheriff—she requested Mr. Shinn, her counsel in Pittsburg, to attend to it. Upon examination he found that it was to be sold under the Mellon judgment, which being subsequent to the conveyance to her would not affect her interest; he consequently gave no further attention to the matter. Some time afterwards, Mr. Shinn found that the land had been sold to James, without his knowledge, under the Kramer & Rahm judgment, and advised the plaintiff that her husband would hold in trust for her.

Judge Mellon's testimony was, that after he found his judgment was posterior to the sale to the plaintiff, he tried to purchase one of the Kramer & Rahm judgments, but they declined to sell

one ; he therefore bought the three.   James knew Judge Mellon had bought them, and had been negotiating with him for some time for time on the purchase-money, in case he (James) became the purchaser of William's interest; this was before Mellon purchased the judgments.   James was often at his office, about it, and talking about his wife and William's troubles ; he gave James time on part of the purchase-money, and took his note for it.   In these conversations, he obtained his impression from James that William had conveyed to the plaintiff.

Mr. Selden, who had charge as attorney of the Kramer & Rahm judgments, said : James called on him in reference to them ; his recollection was that James desired to use the judgments to divest the interest of his wife in some real estate ; Selden had no instructions to collect the judgments.   There was evidence that Mr. Mellon had been counsel for James during 1857 and 1858, and that at some. visits to Mellon's office about the time of the sheriff's advertisement of the land, James said they were going to sell out William's interest at sheriff's sale.

There was evidence also of want of consideration for the conveyance of William to the plaintiff.

After argument the court said :   *   *   " We deduce the following facts :	*	*	*	*	*	*

" 6. That prior to the sheriff's sale James Swisshelm, with a full knowledge of his wife's title under the deed from William Swisshelm, made an arrangement with the holder of the Kramer & Rahm judgments, by which he was to become the purchaser at the sale, and subsequently pay the amount of said judgments, debt, interest and costs ; that this agreement was made and carried out by the defendant James Swisshelm, for the purpose of defeating his wife's title, and vesting the same in himself.

" 7. That since her divorce, the plaintiff has lived in Minnesota and Washington City, making occasional visits to Allegheny county.

" 8. That prior to the divorce, the plaintiff joined with James Swisshelm, her husband, in a deed to R. H. Palmer, for 20 acres of the above-described land ; that since the date of said decree, James Swisshelm has joined with his mother Elizabeth Swisshelm in several deeds, as set forth in plaintiff's bill, for portions of the residue of said real estate, without the authority or consent of the plaintiff; that these last-mentioned conveyances and agreement with Anderson and Noss were executed by James Swisshelm with a full knowledge of the plaintiff's title under the deed of William Swisshelm, and without any recognition of said title, but professing to convey the entire title to said purchasers ; that the purchasers from James Swisshelm and his mother have paid the consideration-money of their respective purchases, with the following exceptions, viz.: James S. King owes $1919.30 ; Jacob

S. Newmeyer owes $2000, with interest from April 1st 1867; Anderson and Noss owe $1800, with interest from October 1st 1865.

9. " That the several purchasers under the conveyances executed after the decree of divorce had no notice, actual or constructive, of the plaintiff's title under the deed from William Swisshelm aforesaid, until they were notified thereof, about the time of filing this bill."

The court therefore decreed, " That Jane G. Swisshelm, plaintiff, is the owner in fee simple, subject to the life estate of Elizabeth Swisshelm, of the one undivided third part of all that certain tract of land situated in Wilkins township," &c.   *   *   * " excepting thereout those portions conveyed to George McCague, Jacob S. Newmeyer, John S. Davidson, James S. King and Frances S. King, and R. H. Palmer, W. Anderson and John Noss; and that the defendant, James Swisshelm, be perpetually enjoined from selling or conveying, or assuming to sell or convey, or in any manner encumbering the title of the plaintiff, Jane G. Swisshelm, aforesaid, or any part thereof;" and dismissed the bill as to the other defendants; " without prejudice to the plaintiff's right to compel defendant, James Swisshelm, to account for the one-third of the value of lands heretofore sold by him."

From this decree James Swisshelm and the plaintiff appealed to the Supreme Court.

James Swisshelm assigned for error the decree and overruling his demurrer.

The plaintiff assigned for error the dismissing of the bill as to the other defendants.

*A. M. Brown*, for James Swisshelm, cited Brightly's Eq. Jur. 518, 519; 2 Daniel's Chan. Pr. 983; Horton's Appeal, 1 Harris 67, 71; Brawdy *v*. Brawdy, 7 Barr 159; Greenlee *v*. Greenlee, 10 Harris 225, 236; Eberly *v*. Groff, 9 Id. 251, 256; Boyd *v*. Negley, 3 P. F. Smith 387; Spier's Appeal, 2 Casey 233; Dillinger's Appeal, 11 Id. 357; Fitler *v*. Fitler, 2 Phila. R. 372; Mitchell *v*. Kintzer, 5 Barr 216; Gilbert *v*. Hoffman, 2 Watts 66; Zerbe *v*. Miller, 4 Harris 496; Jackson *v*. Summerville, 1 Id. 368–370; McCormick *v*. McMurtrie, 4 Watts 462; Mercer *v*. Selden, 1 How. 54; Stoolfoos *v*. Jenkins, 8 S. & R. 175; Chew *v*. Southwark, 5 Rawle 160; Hitner *v*. Ege, 11 Harris 305; Pierce *v*. Hakes, Id. 231; Cord on Legal and Eq. Rights of Married Women 466; 4 Kent's Com. 29; 1 Co. Litt. 32; Jackson *v*. Jackson, 5 Cowan 74–98; Bates *v*. Shralder, 13 Johnson 260; Jackson *v*. Hilton, 16 Id. 96; DeGrey *v*. Richardson, 3 Atk. 469; Blood *v*. Blood, 23 Pick. 80; Eldredge *v*. Forrestal *et al.*, 7 Mass. Rep. 253, 5 N. Hamp. Rep. 469, 8 Id.

240 ; Green *v.* Putnam, 1 Barb. Sup. C. Rep. 506 ; Durham *v.* Osborne, 1 Paige 634 ; Reynolds *v.* Reynolds, 5 Id. 161 ; Matter of Gregier, 1 Barb. Ch. Rep. 598 ; Co. Litt. 112, 187, a.; 1 Bl. Com. 442 ; 2 Id. 165, 182 ; Litt. § 168 ; 2 Story's Eq. §§ 1367, 1368 ; Smith on Real and Pers. Prop. 143, 169, 877, 882 ; Fitzh. Ab. *Prescription* 61 ; Brown's Ab. *Custom* 56 ; Tomlin's Law Dic. *Baron & Feme ;* Com. Dig. *Baron & Feme,* D. 1 ; Pybus *v.* Smith, 1 Vesey, Jr. 189 ; 2 Spence's Eq. Jur. 513 ; 2 Story's Eq. Jur. §§ 1395–6 ; Lady Arundel *v.* Phipps, 10 Vesey 140 ; Livingston *v.* Livingston, 2 Johns. Ch. R. 537 ; Wallingford *v.* Allen, 10 Pet. Rep. 583 ; Bullard *v.* Briggs, 7 Pick. 533 ; Shephard *v.* Shephard, 7 Johns. Ch. R. 57 ; Acts of April 11th 1848, § 6, Pamph. L. 536, April 25th 1850, § 139, Pamph. L. 576, Purd. 699, 701, pl. 11, 18 ; Cumming's Appeal, 1 Jones 272 ; Goodyear *v.* Rumbaugh, 1 Harris 480 ; Sheidle *v.* Weishlee, 4 Id. 140 ; Murray *v.* Keyes, 11 Casey 384 ; Patterson *v.* Robinson, 1 Casey 81 ; Ramborger *v.* Ingraham, 2 Wright 146 ; Glass *v.* Warwick, 4 Wright 140.

*J. B. Penny* (with whom was *William G. Hawkins, Jr.*), for Jane G. Swisshelm, cited 2 Greenl. on Ev. 300 ; Act of March 18th 1775, § 1, 1 Sm. Laws 422, Purd. 321, pl. 71 ; Rhine *v.* Robinson, 3 Casey 35 ; Drysdale's Appeal, 2 Harris 539 ; Mullen *v.* Wilson, 8 Wright 413 ; Rigler *v.* Cloud, 2 Harris 361 ; Lewis *v.* Bradford, 10 Watts 80 ; Sherk *v.* Endress, 3 W. & S. 255 ; Huey's Appeal, 5 Casey 220 ; Drum *v.* Painter, 3 Id. 148 ; Stat. 27 Eliz. cap. 4, Roberts's Dig. 298 ; Foster *v.* Walton, 5 Watts 378 ; Hill *v.* Epley, 7 Casey 334 ; Keen *v.* Coleman, 3 Wright 301 ; Flory *v.* Becker, 2 Barr 472 ; Hill on Trustees 837, 839, note 4 ; Kent's Com. 371, note ; Arnold *v.* Jack, 12 Harris 61 ; Stimpson *v.* Butterman, 5 Cush. 153 ; 2 (Gr.) Cruise 358, pl. 26, 366, pl. 34 ; 1 Washb. Real Prop. 210, 425, §§ 14, 16 ; Lloyd *v.* Lynch, 4 Casey 424 ; Beeson *v.* Beeson, 9 Barr 287 ; Downer *v.* Smith, 38 Vt. 468 ; Gibson *v.* Winslow, 10 Wright 380 ; Weaver *v.* Wible, 1 Casey 272 ; Bothwell *v.* Dewees, 2 Black U. S. Rep. 618 ; Weeks *v.* Haas, 3 W. & S. 523 ; Walker *v.* Reamy, 12 Casey 410 ; Fogelsonger *v.* Sommerville, 6 S. & R. 267 ; Church *v.* Church, 1 Casey 278 ; Dickson *v.* Codwise, 1 Sandf. 214 ; Methodist Church *v.* Jaques, 3 Johns. Ch. R. 77 ; Stump *v.* Findlay, 2 Rawle 174 ; O'Neil *v.* Hamilton, 8 Wright 18 ; Sugden on Vendors 453 ; Story's Eq. 1204 ; Hill on Trustees 159 ; Note to Bassett *v.* Nosworthy, 2 Lead. Cas. in Eq. 90, 117, 120 ; Beck *v.* Uhrich, 4 Harris 503 ; Cox *v.* Sartwell, 9 Id. 488 ; Chew *v.* Barnett, 11 S. & R. 389 ; Trefts *v.* King, 6 Harris 160 ; Lancaster *v.* Dolan, 1 Rawle 245 ; Knouff *v.* Thompson, 4 Harris 358 ; Stewart *v.* Freeman, 10 Id.

6 P. F. SMITH—31

[Swisshelm's Appeal.]

120; Sailor, *v.* Hertzogg, 2 Barr 183; Farley *v.* Stokes, 1 Pars. R. 422; Walsh *v.* Stille, 2 Id. 21; McAteer *v.* Mullen, 2 Barr 32; Note to La Neve *v.* La Neve, 2 Lead. Cas. in Eq. 160; Corry *v.* Caxton, 4 Binn. 148; Sergeant *v.* Ingersoll, 3 Harris 348; Hare & Wall. Notes to 2 Smith's Lead. Cas. 723; Crest *v.* Jack, 3 Watts 238; Heath *v.* Page, 12 Wright 142; Miller *v.* Franciscus, 4 Id. 335; Clark *v.* Trindle, 2 P. F. Smith 492; Act of April 22d 1856, § 1, Pamph. L. 532, Purd. 654, pl. 13; Gernet *v.* Lynn, 7 Casey 94; Union Canal Co. *v.* Young, 1 Wh. 432; Mitchell *v.* Kinzer, 5 Barr 216; Gilbert *v.* Hoffman, 2 Watts 66.

*S. Schroyer*, for King and Wife, Newmeyer, Anderson and Noss, referred to De Haas *v.* Bunn, 2 Barr 338; Gurnall *v.* Wood, Willes 211; Burd *v.* Dansdale, 2 Binn. 91; Humphreys *v.* Humphreys, 1 Yeates 427; Shaupe *v.* Shaupe, 13 S. & R. 12; McCormick *v.* McMurtrie, 4 Watts 195; Barlow *v.* Beall, 8 Harris 178; McKean and E. Imp't. Co. *v.* Mitchell, 11 Casey 269; Boggs *v.* Varner, 6 W. & S. 469; Clark *v.* Hackethorn, 3 Yeates 269; 3 Bl. Com. 337; Scott *v.* Gallagher, 14 S. & R. 333; Hood *v.* Fahnestock, 1 Barr 470; 2 Verm. 159; Billington *v.* Welsh, 5 Binn. 129; Martin *v.* Smith, Id. 22; Arnold *v.* Jack, 12 Harris 61; Jenour *v.* Jenour, 10 Ves. 562; Morley *v.* Bird, 3 Id. 631; 5 Bac. Ab. *Joint Tenants*, 253; Chorpenning's Appeal, 8 Casey 316; Weaver *v.* Wible, 1 Id. 272; Myer's Appeal, 2 Barr 466; Smiley *v.* Dickson, 1 Penna. Rep. 441; Lloyd *v.* Lynch, 4 Casey 424; Van Horne *v.* Fonda, 5 Johns. Ch. 407; Dickinson *v.* Codwise, 1 Sandf. Ch. 226; Lewis *v.* Bradford, 10 Watts 80; Youst *v.* Martin, 3 S. & R. 429; Bellas *v.* McCarty, 10 Watts 49; Dougherty *v.* Jack, 5 Id. 456.

*J. M. Stoner*, for Davison, referred to Williams on Real Property 186; 4 Kent's Com. 29; 2 Bl. Com. 127; Co. Litt. 291; Walker *v.* Reamy, 12 Casey 410; Bennett *v.* Davis, 2 P. Wms. 316; Hill on Trust. 406, 420; Jamison *v.* Brady, 6 S. & R. 466; McKennan *v.* Phillips, 6 Whart. 571; Notes to Hulme *v.* Tenant, 1 Lead. Cas. Eq. 394; Acts of March 31st 1812, § 1, 5 Sm. L. 395, Purd. 569, pl. 1; April 11th 1848, § 6, Pamph. L. 536, Purd. 699, pl. 11; Arnold *v.* Jack, 12 Harris 61; 2 Bl. Com. 185; Van Horne *v.* Fonda, 5 Johns. Ch. 388, 407; Fogg *v.* Mann, 2 Sumner 486, 522; Weaver *v.* Wible, 1 Casey 270; Liggett *v.* Bechtol, cited in 1 Penna. R. 439; Smiley *v.* Dixon, Id. 439, 441; Lloyd *v.* Lynch, 4 Casey 419; Downer *v.* Smith, 38 Vt. 468; Bothwell *v.* Dewees, 2 Black U. S. Supreme Court Rep. 618; 1 Lead. Cas. Eq. 96; Matthews *v.* Bliss, 22 Pick. 48; Story on Agency, § 213; Jackson *v.* Woolsey, 11 Johns. R. 446; Sheldon *v.* Sheldon, 13 Id. 220; Fisk *v.* Sarber,

[Swisshelm's Appeal.]

6 W. & S. 28; Prevost v. Gratz, Pet. Cir. C. R. 378; Hays v. Heidelberg, 9 Barr 210; Chorpenning's Appeal, 8 Casey 315; Hall's Appeal, 4 Wright 414; Cadbury v. Duval, 10 Barr 265; Painter v. Henderson, 7 Barr 50; Youst v. Martin, 3 S. & R. 433; Bellas v. McCarty, 10 Watts 48; Juvenal v. Jackson, 2 Harris 519; Boggs v. Varner, 6 W. & S. 472; Wood v. Farmere, 7 Watts 385; Good v. Good, 9 Id. 568; Milliken v. Brown, 1 Rawle 390; Ogden v. Porterfield, 10 Casey 191; Lightner v. Mooney, 10 Watts 412; Keller v. Nutz, 5 S. & R. 246; 2 Lead. Cas. Eq. 181; 14 Pick. 224; 6 Hall 473; 2 Barb. Ch. 151; 1 Johns. Ch. R. 556; 10 Ohio R. 83; 10 Missouri R. 34; 24 Maine R. 29; Pleasants v. Pemberton, 2 Dallas 196; Baring v. Shippen, 2 Binn. 165; McFerran v. Powers, 1 S. & R. 107; Work v. McClay, 2 Id. 418; Brown v. Downing, 4 Id. 494; Kronk v. Kronk, 4 W. & S. 127; Dayton v. Newman, 7 Harris 198; Keen v. Coleman, 3 Wright 301; 4 Wash. C. C. R. 129; Stat. 13 Eliz.

*Meredith*, in reply, for Jane G. Swisshelm, referred to Stat. 32 Hen. 8, ch. 28, ch. 34; Roberts' Dig. 219, 227; Greenleaf's Case, 8 Rep. 142, 145.

*A. M. Brown*, in reply, for James Swisshelm and McCague, referred to Croxall v. Shererd, 5 Wallace 287; Watkins v. Holman, 16 Peters 54; Blight v. Rochester, 7 Wheat. 548; The Society v. The Town of Pawlet, 4 Peters 506; Stat. 13 Eliz., *supra;* 27 Eliz., Rob. Dig. 298; Bracken v. Miller, 4 W. & S. 102; 1 Hilliard on Vendors 391–395.

The opinion of the court was delivered, February 4th 1868, by

READ, J.—These two appeals are from a decree in equity of the Common Pleas of Allegheny county, made by that court on a bill filed by Jane G. Swisshelm, plaintiff, against James Swisshelm, George McCague, Jacob S. Newmeyer, John S. Davison, James S. King and Frances S. King, his wife, William Anderson and John Noss, defendants.

John Swisshelm died seised of a tract of land in Wilkins township, Allegheny county, containing 162 acres 19 perches, and allowance of 6 per cent.; having by his will devised the same to his wife, during her life, with remainder to his four sons, James, Samuel, Henry and William, with survivorship in case either should die in the lifetime of their mother without issue. By the death of Samuel in 1840 without issue this estate became vested in his three surviving brothers upon the same conditions. Henry, by deed duly recorded, conveyed all his interest to his brother James, who thus became the owner of two-thirds of said lands, subject to his mother's life estate in the same.

[Swisshelm's Appeal.]

On the death of her mother, Mrs. Cannon, Jane G. Swisshelm became seised of certain real estate, which was sold, and was employed by her in publishing one or more newspapers, during which period her brother-in-law, William Swisshelm, was first clerk, and then a partner, and subsequently conveyed all his interest in the said land to his sister-in-law, Mrs. Swisshelm, by deed dated the 22d February 1856, and recorded on the 16th June of the same year. This was drawn and executed in the office of Mr. Shinn, the counsel of Mrs. Swisshelm, and the consideration mentioned in it is $2000.

In 1856, therefore, James Swisshelm was the owner of two-thirds of this land, and his wife Jane the owner of the other third, subject, of course, to the life estate of Mrs. Swisshelm, the widow of the testator.

On the 15th March 1856, Thomas Mellon, Esq., recovered a judgment against William Swisshelm in the District Court of Allegheny county, the real debt being $254.66, and costs. This judgment was not a lien on Mrs. Swisshelm's one-third of the real estate.

Hugh D. King, for use of W. P. Baum, recovered a judgment against William Swisshelm, in the same court, on the 9th July 1855, for $237 and costs.

On the 5th December 1855, Kramer & Rahm entered three judgments, in the Court of Common Pleas of Allegheny county, against William Swisshelm. These four judgments were liens upon Mrs. Swisshelm's one-third, and altogether, debt, interest and costs, amounted only to $580, the sum bid and paid by James Swisshelm to the sheriff on the 28th December 1857.

Thomas Mellon, Esq., was the counsel of James Swisshelm, and had very frequent and constant interviews with his client, and at the instance of James Swisshelm, issued execution upon his judgment against William Swisshelm, and levied upon his interest in the Swissvale property, which was condemned and advertised for sale by the sheriff, but postponed by the directions of the plaintiff. No further proceedings were had upon this judgment.

It was then determined to get the control of the Kramer & Rahm judgments, or rather of one of them, all three being transcripts from magistrate's dockets, filed in the Common Pleas. James Swisshelm accordingly called on George S. Selden, Esq., the counsel of Kramer & Rahm, in reference to those judgments. "The recollection called to my mind," says Mr. Selden, "was that Mr. Swisshelm desired to use the judgments of Kramer & Rahm for the purpose of divesting some interest of Mrs. Swisshelm in some real estate." "My recollection is distinct about Mr. Swisshelm calling on me in relation to Kramer & Rahm's judgments. I saw him a number of times—my recollection is

distinct in regard to the use he desired to make of the judgment—
it is as I have stated before."

" I had no instructions to collect them or I should have issued
fi. fa. to collect them." It appears, therefore, that these judg-
ments were put in motion by the husband of the plaintiff, and his
counsel, Mr. Mellon, became the purchaser of them, and the exe-
cution on which the property was sold was marked for his use.
At the sale on the 28th December 1857, Mr. Swisshelm became
the purchaser for $580, the exact sum which would cover the four
judgments. Mr. Mellon did not attend this last sale, nor was he
present at the intended sale on his own judgment, which was
stayed by his order.

" I have no distinct recollection," says Mr. Mellon, " of any
particular conversation with James Swisshelm in regard to the
matter, he was at my office so often, and what I recollect dis-
tinctly is, his intending to become a bidder and wanting time in
case he became the purchaser." " I gave James Swisshelm time
on part of the purchase-money, and took his note for it. I don't
remember for what part of the purchase-money the note was given,
but I think the note was for something over $200."

" James Swisshelm was there negotiating about the purchase at
sheriff's sale. My impression is that James Swisshelm had been
talking to me about the sale, or about my claim against it, before
I purchased the Kramer & Rahm judgments.

" In my conversation with James Swisshelm about this title
William had conveyed, it is probable that I had got the idea that
it was conveyed to Mrs. Swisshelm, but I have no distinct recol-
lection of it." " I had heard that the alleged conveyance of
William Swisshelm was to Mrs. Jane Swisshelm."

Can there remain a doubt that the first execution of Mr. Mellon
on his judgment proceeded from his intercourse with James Swiss-
helm, and that it was stayed because this judgment was found to
be subsequent to the date of the conveyance of William Swiss-
helm to Jane Swisshelm, which had been on record upwards of a
year ? Is it not clear that at the solicitation and request of James
Swisshelm, Mr. Mellon became the purchaser of the Kramer &
Rahm judgments because they were prior in date to the convey-
ance ? Of this there can be no doubt, and that the proceedings
on those judgments were carried on at the instance and request of
James Swisshelm, to enable him to become the purchaser at she-
riff's sale. The 6th paragraph of the answer of the defendant,
James Swisshelm, is therefore distinctly disproved, for he did
purchase the estate and interest of William Swisshelm at the she-
riff's sale, with a knowledge of the title of the plaintiff, and for
the purpose of defeating the same, as has been shown by his
whole conduct, including his defence to the present suit.

Mr. Shields, a former student in Mr. Mellon's office, says: "I did hear Mr. James Swisshelm say to me personally that they were going to sell his brother's interest out at sheriff's sale." "I saw the advertisement of the sale of William Swisshelm's property in the papers about that time."

It is in evidence that Mrs. Swisshelm went to Minnesota in the spring or summer of 1857, and that a friend seeing the advertisement under the execution of Mr. Mellon, wrote to her, and she requested him to call on her counsel, Mr. Shinn, and ask him to attend to it. Mr. Shinn attended the sale, which was postponed, and found that the judgment on which the execution was issued, was subsequent to the deed, and concluded he would pay no more attention to it as it could not affect her interest. The sale under the Kramer & Rahm judgment he did not hear of until after the sheriff's deed was executed. His opinion was that Mr. Swisshelm held it in trust for his wife.

Taking the evidence in the most favorable point of view for the defendant, it would appear that he intended originally to strip his brother, but on discovering his wife's title, it became necessary to strip her when she was absent, and without deigning to inform her of his intention to become the owner of her property.

James and Jane Swisshelm were part owners of the same property, they were also husband and wife, occupying towards each other a fiduciary relation of the most confidential character, requiring the utmost degree of good faith between the parties. The husband, without notice to the wife and under the cover of another's name, virtually possesses himself of the control and practical ownership of three judgments of small amount, sells out his wife's property, and for the pitiful sum of $580 becomes the owner of a very valuable interest in an improving tract of land. He is practically the vendor and the vendee, the seller and purchaser, both characters are united in him.

No court of law or equity could ever permit so gross an abuse of the marriage relation. The only effect of the purchase by the defendant was to preserve the estate for his wife, the plaintiff, and the court below were clearly right on this point.

Mr. Shinn had a proper appreciation of the defendant's position as settled by the soundest principles of morality and natural justice.

The plaintiff was therefore the owner of one-third subject to the life estate of the widow of the testator, and the divorce made no other change than to free her and her estate from the control of the defendant, her husband.

The result of this decision may be thus stated: The plaintiff is entitled to one-third of the remaining real estate, to one-third of the moneys due by the bonâ fide purchasers without notice and to

one-third of the moneys received by the defendant, James Swisshelm.

And the decree must be modified accordingly.

> DECREE.—These causes being cross-appeals of plaintiff and defendant came on to be heard at this term, and were argued by counsel, and thereupon, on consideration thereof, it is ordered, adjudged and decreed as follows, viz. : That so much of the decree of the court below as dismissed the bill against the defendants Jacob S. Newmeyer, James S. King, Frances S. King, William Anderson and John Noss be reversed, and that so far as relates to the purchase-money in their hands found by the court below, they are decreed to account for and pay one-third thereof, subject to the life estate of Mrs. Elizabeth Swisshelm, to the plaintiff, Jane G. Swisshelm, and that the defendant, James Swisshelm, is hereby decreed to account for and pay, subject to the life estate of the said Elizabeth Swisshelm, one-third of all sums of money received from the purchasers of those portions of the said tract of land named in the foregoing part of the said decree, excepting R. H. Palmer, to the plaintiff, Jane G. Swisshelm, and with this modification the decree of the court below is affirmed.

> The defendant, James Swisshelm, to pay the costs of both appeals ; his appeal being dismissed.

The following opinion in Ferguson's Appeal, not reported, delivered by Mr. Justice Read, April 1st 1867, settled the construction of John Swisshelm's will, referred to in the above opinion :—

READ, J.—John Swisshelm, by his will, dated April 8th 1831, and duly proved the 3d December 1838, devised all his real property to his wife for life, and after her decease to his sons, James, Samuel, William and Henry Swisshelm, to be equally divided between them. In a subsequent clause he says: "And if one or more of my sons, James, Samuel, William or Henry, should die before they are entitled to receive their shares, and not leave lawful issue, the share or shares of the ones so dying shall be equally divided among the survivor or survivors of those four last-mentioned sons."

The first clause gave the four sons a vested remainder in fee, and the effect of the second clause construing the words " before they are entitled to receive their shares" to mean before they are entitled to receive the same in possession, which they could not do until their mother's death, although at law they took vested remainders after her life estate, made those vested estates in remainder defeasible on their dying without issue in the lifetime of their mother. This happened in the case of Samuel, who died in his mother's lifetime, without leaving lawful issue. (See In re Smith's Trusts, V. C. Wood, Weekly Notes, No. 9, p. 78, March 2d 1867.) The above clauses certainly created no estate tail nor an executory devise, as contended for by the appellant.

The title, therefore, would be a good one, except that Jane G. Swisshelm,

[Swisshelm's Appeal.]

wife of James Swisshelm, by deed of the said William Swisshelm, dated February 22d 1856, and duly recorded, became the owner of all the interest of said William under the will of his father, John Swisshelm. Upon prior judgments William's interest was sold by regular process of law, on the 28th December 1857, to James Swisshelm, the husband of Jane G. Swisshelm. The appellant claims that the purchase of William's interest by Jane was with the knowledge and consent of her husband, and that the husband's subsequent purchase at sheriff's sale was for the benefit of her title. It is true they have since been divorced, but this she disputes, and insists her title is still subsisting.

Now, the rights of Jane, the wife, are not before the court. She is not a party to this suit, and no decree made here would bind her, and nothing is better settled than that upon a bill for specific performance, which is addressed to the discretion of the chancellor, the vendor must make out not only a holding but a *marketable* title, one as to which there is no reasonable doubt either as to matter of law or fact: Dalzell *v.* Crawford, 1 Parsons 45; Alkinson on Titles, 3 Law Library; Speakman *v.* Forepaugh, 8 Wright 371. A purchaser will not be compelled to take a title which will expose him to a lawsuit, unless the adverse claimant should have no such reasonable chance of establishing his claim as would render the title unmarketable. As Mrs. Swisshelm is not now before the court, we cannot say that her claim is so utterly without foundation. This makes it unnecessary to consider the regularity of the decree in her divorce case.

The record in this case as printed is very defective; but we presume upon, the demurrer being overruled an answer was filed and replication and a decree in favor of the plaintiffs, none of which are furnished to us.

As no final decree can be made without making Mrs. Swisshelm a party,

The decree is reversed, with instructions to the court below to permit the plaintiffs to make her a party.