William McCutcheon *v.* Mary Smith et al., Executors of Geo. F. Smith, Dec'd, Appellants.

[Marked to be reported.]

*Partnership—Equity—Dealing in real estate—Secret profit.*

Where two partners, after the dissolution of the partnership, unite in purchasing the real estate of a debtor of the firm, for the purpose of selling it again and making up a portion or all of the debt, they occupy such a relation of trust and confidence to each other that one of them will not be permitted to make a profit at the expense of the other by entering into an agreement to sell the whole tract at a certain price, and without disclosing the agreement purchase from the other his half interest at a price much less than the price which the seller is to receive for it.

*Equity practice—Amendment—Evidence.*

Where a bill is filed by one partner against another for an account, and fraud is not alleged in the bill, but in the testimony taken before the master it appears that the defendant made a secret profit at the expense of his partner by fraudulently concealing a transaction connected with the partnership affairs, the court on exceptions to the master's report will permit an amendment of the bill so as to charge fraud, and refer the case back to the master to permit the defendants to produce such testimony as they may deem fit.

Argued Nov. 2, 1895.   Appeal, No. 206, Oct. T., 1895, by defendants, from decree of C. P. No. 1, Allegheny Co., March T., 1892, No. 669, on bill in equity.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Bill in equity for an account.

The bill alleged that in November, 1867, William McCutcheon and George F. Smith entered into a partnership in the butcher-

ing business, and that said partnership was mutually dissolved on April 1, 1876; that during the existence of the partnership a tract of land of forty-three acres in Ross township was purchased for the purpose of securing a partnership debt, and that the title was taken in the individual names of the partners, but was held as partnership property; that in December, 1890, the land was sold to J. G. Rolshouse for $8,500, and all of the purchase money received by George F. Smith, except the sum of $2,000, payable on account of Smith's death to his executors, and that plaintiff had received of the said purchase money from Smith $2,500. That there had been no settlement of outstanding partnership accounts; that George F. Smith died on January 10, 1891. The bill prayed for account of partnership dealings and property.

The answer denied that the land referred to in the bill had been purchased with partnership money, and averred that it had been purchased after the dissolution of the firm in order to secure an old debt in which both partners were mutually interested.

Before the master, Louis McMullen, Esq., the plaintiff having called a witness, who was duly sworn, offered to prove by the witness on the stand and others to be called all the facts stated in the bill, and especially that the land described in the bill was held by Smith & McCutcheon as partners, having been taken by them in satisfaction of a partnership debt; that while so held, to wit: On the first day of December, 1890, George F. Smith, assuming to own the said land, entered into a written agreement with J. G. Rolshouse, agreeing to sell the said land to Rolshouse for the sum of $8,500. That after the execution of the said contract with Rolshouse and the reception of a considerable portion of the purchase money the said Smith went to his partner, William McCutcheon, and, without revealing to him the fact that he had sold the farm to Rolshouse, but fraudulently concealing the same, induced McCutcheon to make him a deed for his interest in the land for the sum of $2,500 for the purpose, as he stated, of enabling him to close up his business, as he didn't expect to live long.

Objected to by Mr. Shields, counsel for defendants, for the following reason:

1. That it appearing from the bill of plaintiff that he (plain-

tiff) is the surviving partner of the firm of G. F. Smith & Co., he, the said plaintiff, cannot demand from these defendants, the personal representatives of the deceased partner, an account as prayed for in said bill; it being the duty of plaintiff to settle the partnership affairs, if unsettled, and state an account of the partnership, and, if on such statement there appears to be any money due to plaintiff, to present the same properly probated to defendants as the executors of George F. Smith, the deceased partner, and if not paid by them to present and prove the same before the orphans' court on the audit of defendants' account as executors, the said orphans' court alone having jurisdiction, and there being no jurisdiction in the court of common pleas No. 1, sitting in equity, to decree the payment to plaintiff by defendants of any balance due to plaintiff, if any.

2. That the offer is incompetent and irrelevant under the bill and the pleadings in this case.

The master requested the instruction of the court as to the admission of this testimony, and the court directed that objections to the proposed evidence should be overruled.

The master reported that Smith was not entitled to retain the profit which he had made by concealing his agreement with Rolshouse from McCutcheon. He accordingly recommended a decree in favor of plaintiff, reporting inter alia as follows :

McCutcheon had trusted Smith implicitly in the matter, paying to him his share of the taxes and expenses, and referring parties to him who spoke about buying, and was entitled to all the information he possessed concerning the common property.

The law is so well settled that a person appointed to sell cannot be the buyer, so as to gain by the purchase, that it is unnecessary to cite authorities.

Wherever confidence is reposed, justice forbids that it shall be abused, and it applies as strongly to those who have gratuitously or officiously undertaken the management of another's property, as to those who are retained or appointed for that purpose and paid for it : Rankin v. Porter, 7 Watts, 389; Sherriff v. Neal, 6 Watts, 537 ; Lingenfelter v. Ritchey, 58 Pa. 488.

The defendants claim that the parties being tenants in common owed no such duty to one another. That each having bought a one half interest in the land in question with his individual funds, they were entitled to deal at arms' length in the

purchase of each other's interest.   Under certain circumstances such might be the case with tenants in common, but in this case the circumstances under which the parties purchased and held this farm, the purpose they had in view, the object they started out to obtain, the confidence they reposed in each other, established a much closer relation than that of tenants in common.   If, however, they were merely tenants in common, it would not change the rule above stated, for the law is equally well settled in Pennsylvania that one of two tenants in common cannot purchase an incumbrance on or outstanding title to the common property and set it up against his cotenant.   If such a purchase is made, it is held to be made in trust and for the benefit of those interested with the purchaser, and it does not matter if the purchase is made in the name of a third person.

In Duff v. Wilson, 72 Pa. 447, Justice SHARSWOOD says, in discussing the question: " Whenever the acts of a person standing in a confidential relation may admit of two construc-. tions, one right and the other wrong, the presumption is in favor of the former.   Equity will therefore consider the purchase as bona fide and intended for the benefit of all those with whom he is associated in interest."   The same principle is held in Dickey's Appeal, 73 Pa. 244.

In the present case the evidence disclosing the existence of all the elements that go to make up a confidential relation between George F. Smith and William McCutcheon, such as described in the cases cited, the principle that ruled them applies with equal force to it.   In fact the principle applies more strongly to this case for the reason that the very object of Smith was to secure to himself, after he had sold the common property, by purchasing his cotenant's interest, the profits that in justice and equity belonged to his cotenant, and which would be realized out of the sale.

Mr. Smith doubtless believed that he had a right to buy the interest of McCutcheon without informing him he had sold the farm to Rolshouse.   To his mind it was evidently a shrewd but legitimate business transaction that he did not deem necessary to divulge to his counsel, as Mr. Shields states in his testimony that he did not know of the sale to Rolshouse until after the purchase of the McCutcheon interest.   Had he informed his counsel of the fact this case would not now be engaging the attention of the court.

Exceptions to master's report were considered by the court, and the following opinion filed :

If the particular matter now urged against the granting of a decree under the evidence and the allegations in plaintiff's bill had been specially pointed out to the court at the time the objection was made to the offer of the plaintiff's evidence and submitted to the court, we would have undoubtedly sustained the objection to the evidence so far as it went to show the fact that defendants had perpetrated a fraud upon plaintiff by deceiving and taking advantage of him in regard to the lot purchased on partnership account and conveyed to them jointly by the sheriff.   But we would have certainly allowed plaintiff to amend his bill so as to meet the allegations of the answer.

We think it but proper now to allow plaintiff to amend his bill so as to meet the necessities of the case, and to refer the whole matter back to the master so that he may take and consider such other evidence as defendant may see fit to adduce under the bill as amended, and report accordingly.

Plaintiff filed an amended bill which was identical with the original bill, except that it contained the following additional clauses :

Fifteenth.  When George F. Smith bought the interest of the plaintiff in the Hare farm by an agreement in writing on December 1st, 1890, and by deed on December 4th, 1890, for $2,500, as set forth in defendants' answer, he had already sold the whole of the said farm by written agreement to J. G. Rolshouse for eight thousand five hundred dollars and had received five hundred dollars of the purchase money and was to receive the balance thereof as soon as the title was examined and deed made.

Sixteenth.  When George F. Smith bought the interest of the plaintiff in the Hare farm for the sum of twenty-five hundred dollars he fraudulently concealed from the plaintiff the fact that he had already sold the farm to J. G. Rolshouse for the sum of eight thousand five hundred dollars.

Seventeenth.  That Smith and McCutcheon bought the Hare farm to recoup a debt of about $6,000, due to them as partners by Samuel Hare, and they held the farm for that purpose and in such confidence as to entitle either to know all the other knew in relation thereto, wherefore the withholding by Smith from McCutcheon of the fact of the sale of the farm by Smith

to Rolshouse renders the estate of Smith liable to account to McCutcheon for the one-half of the amount received by Smith and his executors on the sale to Rolshouse.

The master filed a second report in which he reaffirmed the findings and conclusions of the original report.

Exceptions to the master's report were overruled, and a decree was entered in favor of the plaintiff for $1,934.

*Errors assigned* were (1) ruling on evidence as above; (2) in allowing the amendment to plaintiff's bill; (4–5) decree; (6) in not sustaining exceptions to master's report; (7) in not dismissing the bill.

*J. M. Shields*, for appellants.—Upon the death of one partner it is the right and duty under the law of the surviving partner to close up the partnership affairs. He should proceed to collect all the available assets of the firm and pay all its debts and hold himself in readiness to exhibit a just and true account of the partnership to the personal representatives of the deceased partner. Such personal representatives can demand an account, and, if not furnished with one, can file a bill against him for an account or settlement, and if they fear loss to the estate by his mismanagement or misjudgment, can apply for the appointment of a receiver: Lindley on Partnership, p. 591; Brightley's Equity Jurisprudence, 210; Kurtz v. Dreibelbis, 126 Pa. 335.

Amendments in equity pleadings are not of right at any stage in the proceedings. The rule seems to be that after witnesses have been examined the court will not unless under very special circumstances or in consequence of some subsequent event allow the bill to be altered or amended: Act of March 4, 1864, sec. 2; Danziesen's App., 73 Pa. 65; Darlington's App., 86 Pa. 512.

For firm moneys or assets received by a partner in his lifetime, the ordinary rule is that his copartner cannot maintain assumpsit against him or his estate, but that he must resort to a bill for an account, or an action of account render: Brubaker v. Robinson, 3 P. & W. 295; Galbreath v. Moore, 2 W. 86; Wright v. Cumpsty, 41 Pa. 102; Finlay v. Stewart, 56 Pa. 183; Meason v. Kaine, 63 Pa. 335.

We insist that the land transaction was an independent venture by Smith & McCutcheon in a piece of land for which each paid out of his funds such amount as was necessary, and that thereby they become only tenants in common with full power to sell their respective interests to strangers or to each other: Rankin v. Porter, 7 Watts, 389; Neal v. Sheriff, 6 Watts, 537; Duff v. Wilson, 72 Pa. 442; Dickey's App., 73 Pa. 218; Shafer's App., 106 Pa. 49.

*A. Blakeley*, for appellee.—After dissolution, a copartnership has all the life and power of its former existence for closing its business, with the right to sue and liability to suit.

As between partners themselves, land which is treated as partnership property, especially if it be paid for with partnership money, is regarded as partnership property only, although the title be taken in the name of the partners individually: Warriner v. Mitchell, 128 Pa. 153; Erwin's App., 39 Pa. 535; Abbott's App., 50 Pa. 234; West Hickory Mining Assn. v. Reed, 80 Pa. 38.

The amendment was proper: Wilhelm's App., 79 Pa. 120; Darlington's App., 86 Pa. 512.

Miller's Estate, 136 Pa. 349, decides that the orphans' court has no jurisdiction to determine the existence of a partnership between a decedent and another: Weigley v. Coffman, 144 Pa. 489.

OPINION BY MR. CHIEF JUSTICE STERRETT, Jan. 6, 1896:

In 1867, William McCutcheon, the plaintiff, and George F. Smith, the defendants' testator, formed an equal copartnership in the name of George F. Smith & Co., which continued until April, 1876, when by mutual consent it was dissolved. One of the outstanding assets of the firm was an overdue account of about $7,000 against Samuel Hare, which the latter was willing but unable to pay. Afterwards, with the view of realizing at least part of this, and other delinquent accounts, the late partners concluded to purchase the "Hare farm," the deed for which had been made to the wife of their principal debtor. They accordingly bought the same at judicial sale, each contributing one half of the purchase money and taking title to an undivided half interest. As found by the learned master, "the

purchase was made for the purpose of selling for the best price they could obtain, and out of the profits, if any, make up a portion or all of the loss they had jointly sustained while carrying on the business in the firm name of G. F. Smith & Co." He also found that while each was authorized by the other to seek a purchaser for the farm, Smith, with the consent of McCutcheon, was the more active in managing the place, and in endeavoring to effect a sale thereof; that in the purchase, ownership and sale of the common property, the parties were equally interested and occupied a confidential relation towards each other; that during the existence of that relation Smith entered into a contract with J. G. Rolshouse whereby the latter agreed to pay $8,500 for the farm. Immediately after doing so he went to McCutcheon and, without disclosing to him the fact that Rolshouse had agreed to give $8,500 for the farm, succeeding in purchasing his undivided half and obtaining a conveyance thereof to himself for $2,500. Smith received $500 from Rolshouse on the execution of his contract, $6,000 in about two weeks thereafter; and shortly after Smith's death the residue of the $8,500, with interest, was paid to his personal representatives.

The facts above outlined, and other material, as well as strongly corroborating facts,—found by the learned master on abundantly sufficient evidence,—are clearly and concisely stated by him in his able and very satisfactory report, and need not be further referred to here.

In view of the facts thus conclusively established, the master was fully warranted in his conclusions that Smith's duty in the premises was to fully inform McCutcheon of the Rolshouse contract; that the relation of trust and confidence, which had so long bound them together, could not be severed by the one buying out the other's interest in the farm without first divulging to the fullest extent all the knowledge he possessed concerning their joint enterprise. Smith did not do this; on the contrary, at the very time he induced McCutchen to sell and convey his half interest in the farm to himself for $2,500, he had Rolshouse's agreement to pay $8,500 for both interests, and adroitly concealed the fact until he accomplished his purpose.

If authority for the legal conclusions of the master, of which the decree is predicated, be needed it will be found in the cases cited by him; to which may be added Swisshelm's Appeal, 56 Pa. 475; Rich v. Black, ante, p. 92, and cases there cited.

We find nothing in the record that would warrant us in sustaining any of the assignments of error; nor do we think that either of them requires discussion. In the circumstances, the amendment of plaintiff's bill was rightly allowed, and the testimony received and considered by the master was neither irrelevant nor incompetent.

There was no error in dismissing the exceptions to the master's report, nor in entering the decrees recited in the fourth and fifth specifications.

Decree affirmed and appeal dismissed, with costs to be paid by the defendants.