A. ELWOOD JONES and JAMES G. KITCHEN

*v.*

JOHN S. DAVIS.

1. Defendant, having purchased certain hotel property for $100,000, signed! a contract to divide with complainant the net profits arising from the sale· thereof, in consideration of the latter's services in purchasing the property, and his giving his undivided attention to its sale. A portion of the land was· plotted, and sold for $55,400. A part of the hotel was moved, mortgaged for· $60,000, and run by defendant through the summer. The other part was· leased, with privilege of purchase. For about a year complainant gave his· undivided attention to superintending the changes, and in trying to effect sales,. when friendly relations were ruptured.—*Held*, that since defendant had apparently been reimbursed his outlay, complainant was entitled to an account from him, and the fact that complainant had had little success in effecting sales was immaterial.

2. Such contract was a sufficient memorandum to satisfy the statute of frauds.

3. "Profits" do not necessarily imply money, but may consist of unsold· portions of the property.

4. Complainant executed an assignment of his interest in such contract, wherein he fully recited the rights of the parties thereunder.—*Held*, that an· acceptance by defendant of notice of such assignment, written on the back thereof, estopped him from denying the recitals therein, when the assignee· had acted upon them.

On bill, answer and proofs taken in open court.

*Mr. Martin P. Grey* (with whom was *Mr. Joseph De F. Junkin*,. of Philadelphia), for the complainants.

*Mr. Allen B. Endicott* (with whom was *Mr. I. Newton Brown*,. of Philadelphia), for the defendant.

GREEN, V. C.

The complainant Jones, in 1889, ascertained that the United! States Hotel property at Atlantic City could be purchased for· $100,000. It consisted of a whole block of land, with the hotel

buildings. In his judgment there was money to be made on a purchase at that price by disposing of the unoccupied portions of the land. Having no money to invest, he looked for some gentleman of means, who was willing to enter into the speculation and put up the amount necessary to make the cash payments.

Having an acquaintance with Mr. Davis, the defendant, he approached him with a proposition contemplating the purchase by Davis of the property, and that gentleman finally became the purchaser, under the conditions hereafter set out.

An agreement in writing was entered into between the owners, the United States Hotel Company, and John S. Davis, which is dated October 1st, 1889, but was not signed until October 4th, for the sale to and purchase by him of the property for $100,000, to be paid, $10,000 on signing the agreement, $30,000 on February 1st, 1890, and $60,000 on May 1st, 1890, the purchaser to have the right of immediate possession, but not to move buildings without giving security. On October 4th Mr. Davis paid the first $10,000.

Cotemporaneous with this transaction the following paper was drawn by Jones and signed by Davis:

"PHILA., October 1, 1889.

"*To whom it may concern:*

"This is to declare that having this day purchased, from the United States Hotel Company, the United States Hotel property at Atlantic City, for the sum of one hundred thousand dollars, that I hold the same subject to the following interest of A. Elwood Jones therein, viz.: That after I have received from the sale of the said property, either in part or as a whole, the full amount of money invested therein by me, together with interest on the money, and the incidental expenses attending the said transaction, I am to divide equally with the said A. E. Jones the net profits of said operation, in consideration of his services in effecting the purchase of said property, and his giving his undivided attention to the sale and disposition thereof.

"JOHN S. DAVIS.

"Witness present—
"W. H. PETTIT."

There was an understanding by which Davis was to sell lots before the delivery of his deed, and the hotel company was to make the title to the purchasers, on receiving the purchase-

money, which was to be credited on the consideration to be paid by Davis.

The plan was settled on by Davis and Jones to move the hotel proper, except one section, from its former location to the southwestern end of the block, to open a street through the middle of the block, and lay off the balance in building-lots.

A contract to move the hotel was made November 8th, 1889, to be completed February 15th, 1890, and the work was commenced and prosecuted with energy, and the building put in order for occupancy during the then next summer season.

The deed to Davis was dated March 7th, 1890, but was not delivered until May of that year.

Between October 4th, 1889, and the delivery of the deed, lots were disposed of to the amount of $43,400, and soon afterwards others to the amount of $12,000. A mortgage was negotiated on the hotel and unsold lots for $60,000, which was realized by Mr. Davis May 23d, 1890.

Immediately on the agreement being signed Jones went to Atlantic City and took charge, acting, however, under the directions of Mr. Davis as to all matters involving a sale or radical change. He superintended the work going on, and busied himself in trying to effect sales.

The hotel was refitted by Mr. Davis at his own expense, and was operated by certain parties for him during the season.

The portion of the hotel not moved from Atlantic avenue has been leased, with a privilege of purchase, and Mr. Davis has contracts for the purchase of all the property remaining unsold, except the large hotel.

Differences arose, during the summer, between the parties, which resulted in a breach of their friendly relations, and all intercourse of a business character, except the most formal, has ceased, and any harmonious action is rendered improbable, if not impossible.

The complainant Jones, by writing under his hand and seal, under date of November 25th, 1889, assigned to the complainant Kitchen all his right, title and interest in the said hotel property, and all his interest in the profits to be derived upon a sale of the

same, with a request and direction to John S. Davis to pay and transfer the same to said Kitchen when realized, subject to the sum of $2,500 to be retained by Davis.

This paper contains the following recital :

"And whereas, upon October 1st, 1889, through my instrumentality, John S. Davis, of Philadelphia, purchased what is known as the United States Hotel 'property at Atlantic City, New Jersey, for the sum of $100,000, and on the same day agreed with me that in consideration of my services, and of my giving my personal attention, without compensation, to the sale and disposal of the property so purchased, that when the same was disposed of, and he, the said Davis, had been repaid the said purchase-money, with interest and expenses, the net proceeds and profit arising from the sale of such property over and above the mentioned amount should be divided share and share alike between the said Davis and myself."

At the end of this assignment an acceptance was signed by Mr. Davis, in these words :

"I hereby accept notice and service of above assignment, this twenty-fifth day of November, 1889, with the distinct understanding that the above $2,500 is to be paid me before any division of profits arising from sale of above property.
                                        " JOHN S. DAVIS."

The evidence shows this assignment was given to Kitchen by Jones as collateral security.

The complainants contend, and the evidence makes it probable, that the portions of property sold, and under contract, have realized the amount of Mr. Davis's investment and necessary expenses, leaving the equity in the hotel property proper, at least, as a profit in the adventure.

The papers signed by Mr. Davis relieve the case of difficulty, and dispose of the argument advanced on the basis of the statute of frauds.    That dated October 1st, 1889, is not only a declaration of trust, but it is Mr. Davis's admission in writing what the agreement between himself and Jones was ; and his acceptance, written on the assignment from Jones to Kitchen, under the circumstances, would estop him from denying the recitals as to Jones's interest, if Kitchen acted upon them to his detriment.

There is no ambiguity in the declaration dated October 1st. It is terse, but comprehensive.    It recites the object and extent

of the trust, the consideration, and the contract on which it was based.

Davis had purchased the property ; he was to make all the payments and was to take the title in his own name. If Jones was to have an interest in the scheme which would attach to the property, it was necessary it should be. manifested in writing, and the paper bears intrinsic evidence that it was given to fix and define that interest. It declares that he, Davis, has purchased the United States Hotel property at Atlantic City, and that he holds *the same*, subject to the following interest of Jones *therein*. Here is a distinct recognition of Jones's interest in the property, and that Davis holds the title subject to such interest.

Then follows the statement of what the contract between them is, with reference to the time when Jones's interest was to be realized by him, and the extent of such interest. As to time, it is when Davis has received from the sale of the property, either in parts or as a whole, the full amount of money invested therein by him, together with interest on the money, and the incidental expenses attending the transaction.

As to the amount of Jones's interest, it provides that Davis is to divide equally with him the net profits of the operation.

The paper also states the consideration upon which the declaration is founded, and is two-fold—executed and executory; it recites it is in consideration of his services in effecting the purchase of the property. This had been done by Jones, and was the executed part of the consideration. The executory was, that he was to give his undivided attention to the sale and disposition of the property.

The evidence shows that Mr. Jones immediately went to Atlantic City, and busied himself with the sale and care of the property. Much comment is made as to his inefficiency in completing sales, and generally as to the lack of results from his efforts. It appears, however, that sales were made before the deed was delivered in May, 1890, and shortly thereafter, amounting to $55,400, leaving still on hand and undisposed of the large hotel on Pacific avenue and the smaller one on Atlantic avenue, both of which are occupied, besides other desirable vacant prop-

erty. While it may be true that Davis had a hand in the sales, and that the real estate agents may have aided in them, there can be no doubt as to Jones superintending the removal of the buildings, his general care of the property, and his effort to sell, and that he was not only by the public, but by Davis himself, recognized as Davis's agent in the management of the property, subject, of course, as agents usually are, to the supervision and direction of the principal. Jones was, under the declaration, not to effect sales, but he was to give his undivided attention to the sale and disposition of the property. Whatever sales were made, whether by Jones individually or through the instrumentality of real estate agents, Davis ratified when he gave deeds or confirmed the terms. If Jones, in good faith, did whatever was in his power to dispose of the property at a price and on terms acceptable to Davis, in my judgment it was all he was required to do.

I find no evidence of any serious difficulty between the parties until about the time of the rupture, which appears to have been occasioned by Jones's occupancy of portions of the hotel with his family, rather than from anything connected with the sale of the property. I find no satisfactory evidence that, prior to this time, Davis had objected either to the way Jones was performing his part as agent, or to his not doing all in his power to carry out his part of the scheme. Davis says he did not object to Jones, that Jones did whatever he was told by him to do, and the one cause of complaint now seems to be that Jones was not able or did not sell the property so as to realize sufficient to anticipate the payments, in the first place, and has not made sales of the balance. The removal of the large hotel and refitting it, and the consequent necessity on Mr. Davis's part to enter into arrangements with others to run it as a hotel, has complicated Mr. Davis's position in the enterprise to a slight extent, but does not, I think, interfere in an adjustment of the interests of the parties to this suit.

There may not be any word or term to express the exact relations of these parties, but I think the interests are easily defined. That they were not partners requires no argument or citation of authority. Neither did Jones's interest in the venture prevent

Davis's conveyance in good faith of any portion of the property. He had the title, and, as between himself and the world, was the sole owner, but under his declaration of trust he held that title subject to an interest of Jones in a moiety of the profits of the speculation, to be adjusted when his advances were reimbursed. Profits do not necessarily imply money to be divided ; they may be represented by the unsold portion of the property which was the subject of the speculation.

The figures given show that the amount originally invested by Mr. Davis has been secured by the sale of the lots, and the presumption is strong that the necessary expenses incurred are met or approximated by sale and contracts.

The relations of the parties are such that no results are to be looked for from any unity of action in the sale of the only remaining piece of property. This would be ground for the dissolution of a partnership (*Sieghortner* v. *Weissenborn*, *5 C. E. Gr. 172*), and certainly furnishes sufficient ground why the complainants should be entitled to an account from the defendant, if the defendant has apparently been reimbursed his outlay.

I advise a reference to a master to take and state an account between Mr. Davis and Mr. Jones of the amounts paid, expended and received, contracts for sale entered into, and value of property unsold, with respect to the purchase of the United States Hotel property at Atlantic City.