## GEORGE T. WARWICK

*v.*

## CHARLES S. STOCKTON.

1. Complainant sold defendant the exclusive right to manufacture and sell certain inventions, the agreement providing that defendant should furnish capital and machinery for the enterprise, and pay complainant half the profits after deducting a reasonable rental for the factory. Defendant also agreed to keep books of account, open to complainant's inspection, and to render accounts periodically. Defendant was given power to manage the business.— *Held*, that this was an agreement of joint adventure, and not of partnership.

2. A receiver will not be appointed at the suit of one of the parties to a joint adventure, in the absence of fraud or mismanagement. or actual danger to the joint assets.

Motion for a receiver *pendente lite*. Heard on petition and affidavits.

*Mr. George J. McEwan,* for the complainant.

*Mr. Adrian Riker,* for the defendant.

PITNEY, V. C.

The object of the bill is to establish ordinary partnership relations between the complainant and defendant, to have an account of the partnership transactions, and a receiver with power to sell the partnership assets. There is no specific prayer for a dissolution, but, of course, a receivership and sale of the assets work a dissolution.

The complainant is an inventor. The defendant is a capitalist, in a moderate way, living in the city of Newark, and at and prior to the 10th of October, 1894, was the owner of a factory building and plant which was idle. Complainant claimed to be the owner of certain patents for the manufacture of certain parts of bicycles, and on that day the parties entered into a partnership agreement as follows:

Warwick *v.* Stockton.

"This agreement, made the tenth day of October, 1894, between George T. Warwick, of the city of Springfield, in the State of Massachusetts, party of the first part, and Charles S. Stockton, of the township of East Orange, Essex county, New Jersey, party of the second part—

"Witnesseth: Whereas, the party of the first part is the owner of certain patented improvements in the manufacture of bicycle saddles, pedals, hubs and other parts; and whereas, *the party of the second part is desirous of securing the exclusive right to manufacture and sell* the same within the United States of America:

"Now, therefore, in consideration of the premises and the sum of one dollar—

"I. Said party of the first part has agreed to convey, and by these presents does assign, transfer and set over, *unto the said party of the second part, the sole and exclusive license to manufacture and sell* all parts of bicycles containing inventions covered by patents owned or controlled by party of the first part throughout the United States of America during the continuance of this agreement.

"II. The said party of the second part hereby agrees to furnish all necessary capital, machinery, tools and factory room for the economical manufacture of said articles *and to manufacture and sell the same,* and at the end of each year to furnish to the party of the first part a statement of the business of the preceding year, and to pay over to him one-half of the net profits shown by such statement. And it is agreed that in estimating the net profits there shall be allowed to the party of the second part, as part of the cost of manufacture, a reasonable rental for the factory room and power devoted to said business; that full and accurate books of account shall be kept of the cost of such manufacture and sale; that *the account-books of said business shall be open at all reasonable times for the inspection of the party of the first part* or his representatives.

"It is further agreed that this agreement shall continue in force for the period of two years from its date; that it may be terminated at any time by either of the parties for any one of the following causes:

"I. By the party of the second part ceasing to manufacture for a period of three months.

"II. If the net profits at the end of the first twelve months shall not amount to five hundred dollars; provided, however, the party desiring to terminate this agreement shall have given to the other party sixty days' notice, in writing, of his intention so to terminate the same, whereupon all rights thereby granted and conveyed shall terminate.

"III. It is further agreed that the party of the first part shall take the supervision of the equipment of the factory and appliances for the construction and manufacture of the said goods, at a salary of $3,600 per year. If the books show a profit warranting it, it is understood that Mr. Warwick may draw fifty per cent. of his share. It is further agreed that *the party of the second part shall conduct the business herein* agreed to be conducted under the style of 'The Warwick-Stockton Company.'"

This agreement was, at the same time, modified by a contemporaneous agreement as follows:

"Newark, N. J., Oct. 10th, 1894.

"*Mr. C. S. Stockton, Newark, N. J.:*

"Dear Sir—In reference to my salary of thirty-six hundred dollars per year, stated in the agreement I have this day made with you, I am willing and will pay you for value received eighteen hundred dollars of my salary as long as the agreement referred to shall last, that is, two years. It is also .agreed, if I understand rightly, that we are to divide all profits derived from the bicycle business equally after all commissions and running expenses have been paid. Commissions in this instance means to include whatever you may pay Mr. Elkins, and it is understood that, according to above agreement, that Mr. Elkins is not to receive over twenty-five per cent. of the net profits.

"Geo. T. Warwick."

The parties proceeded to carry out this agreement by the investment by the defendant of over $40,000, in additions to the pre-existing plant, in his factory in the way of new machinery and other appliances for launching and conducting the business, all done under the supervision of the complainant. On the 10th of August, 1895, a further agreement was entered into between them as follows:

"Newark, N. J., August 10th, 1895.

"It is hereby conceded and agreed that the agreement between the undersigned, dated October 10th, 1894, shall be extended from two (2) years as specified in the said agreement, to the term of five (5) years from the date of said agreement; and it is also agreed that ten (10) per cent. shall be charged off on the cost of the machinery and tools and placed to the expense account."

Some time in the first part of 1896, and after the plant was entirely completed and considerable manufacturing had been done, the relations between the parties became somewhat strained, and the defendant, as the complainant alleges, substantially excluded him from any participation in the management of the business. He did not, however, exclude him from the factory building or from inspecting the books and an opportunity to observe how the business was being conducted; nor did he refuse to listen to complainant's suggestions as to the manner in which the business should be conducted.

There is no allegation that the defendant is insolvent or unable to respond to the complainant for whatever moneys may be due him, nor is the complainant's right to an account denied or disputed.

Semi-annual inventories were taken and accounts and statements thereon made up, commencing with the calendar year instead of the date of the articles of copartnership. This seems to have been acquiesced in by the complainant. In addition, balance-sheets were taken off from the books from time to time and handed to him. There is no dispute but that all business transactions were entered upon the books in such a manner as to show their true character and enable an accountant to make up a correct account therefrom.

The specific grounds on which the complainant asks for a receiver are: The exclusion of the complainant from the management; the employment of incompetent and inexperienced persons in his place; the refusal to pay profits shown to have been earned on July 1st, 1896; the refusal of an inventory and account on October 10th, 1896; denial of complainant's interest in the business; and general mismanagement and bad judgment in the choice of articles to be manufactured.

It may be that the disagreements between the parties have been so severe, and their relations have become so strained, that if this were an ordinary partnership, the successful conduct of which required mutual respect and confidence between the partners, the court might well decree a dissolution. *Lind. Part. p. 580; Seighortner* v. *Weissenborn, 5 C. E. Gr. 172.* The character of the relations of the parties in that respect will be considered further on.

With regard to the other complaints above mentioned, they were, as I think, in the main, fully and fairly met by the answering affidavits.

The question of partnership or no partnership must be determined upon the written contract between the parties, and I think it quite plain that the relation of partners, in the ordinary sense of that term, does not exist between the parties. The substance of the agreement is that the complainant agrees to assign

to the defendant the exclusive right to manufacture certain patented articles, and the defendant agrees to furnish all the capital, machinery, tools and factory for the manufacture of the same, and to do such manufacturing and to render an account of one-half the profits to the complainant.   The only part which the contract provides that the complainant shall take in the business is that he shall take the supervision of the equipment of the factory and appliances for the construction and manufacture of the goods at a salary of $3,600 a year.   This language does not include the management of the business of manufacturing under the patents.   So far as the conduct of the business itself goes, the express language used is this, in paragraph II., the defendant agrees to furnish all the necessary capital and so forth for the manufacture of said articles and to "manufacture and sell the same;" and in the third paragraph are these words:

"It is further agreed that the party of the second part shall conduct the business herein agreed to be conducted under the style of 'The Warwick-Stockton Company.'"

All the money was furnished by the defendant, and the license to manufacture with all the plant and machinery of every kind was to be and is his individual property.   This is further shown by the extension agreement, which provides for charging against expense account ten per cent. on the cost of machinery and tools each year.   There is no provision, expressed or implied, that the complainant should have the usual power of a partner as agent of the firm to bind the partnership and to take part in the details of the management of the business, nor is there anything in the agreement to indicate that he was to become liable for any share of the losses if the business was unsuccessful.   He was to have his salary whether the business was successful or not.   The express provision for access by complainant to the books of account also indicates that it was not contemplated that he should have an active share and voice in the everyday management of affairs.   Such a participation in the business would necessarily give constant access to the books and no special provision therefor would be necessary.   These features

show that the relations were not those of partners, but of a mere common interest in a joint adventure in which one party took all the risk of loss and the other party had a share of the profits, if any. In my judgment, the defendant continues to be the legal and equitable owner of the whole plant and business, and has the full control thereof, subject to the duty to account to the complainant for the manner in which he conducts it, and for one-half of the profits. He must, of course, conduct it with an honest and faithful endeavor to make it successful and profitable. *Wild* v. *Davenport, 19 Vr. 129* (at *p. 132*) ; *Nutting* v. *Colt, 3 Hal. Ch. 539.*

But even if this were the case of an ordinary partnership, I am of the opinion that the facts do not warrant the extreme remedy of a receiver. The time limited for the partnership has not expired, and the familiar rule is that the court will not interfere in such a case by the extreme measure of a receiver except for the purpose of the preservation of the assets in the face of a real danger of loss, and I see none in this case.

The authorities on this point in New Jersey are clear and uniform. In *Renton* v. *Chaplain & Carter, 1 Stock. 62,* Chancellor Williamson reviewed most of them down to that date. There, so the chancellor found, Carter and Chaplain were actual partners, *inter sese,* by written contract which provided for a partnership term of five years, and its continuation during that period was provided for in case of the death or physical disability of either of the partners. The business of the partnership was that of manufacturing certain goods with a patent machine, and without that machine the business was not worth carrying on. At the time the bill was filed Carter had withdrawn all the money and more than he had ever contributed to the partnership, and Chaplain was, as between them, the owner of the plant and all the assets. Carter's interest had been sold out at sheriff's sale, under a judgment recovered against him individually, and bought by Renton, the complainant. It was claimed that the partnership was absolutely dissolved by the sale by the sheriff of the interest of one partner in the assets, and that a receiver must therefore be appointed ; but Chancellor William-

son, after a full review of all the authorities up to that time, declined to appoint a receiver, on the ground that he was not satisfied that there was any gross misconduct on the part of Chaplain or such danger of loss as would justify the interference of the court.

The same disposition was shown by the same learned judge in the case of *Birdsall* v. *Colie, 2 Stock. 63*, where he reaffirms his conclusion in *Renton* v. *Chaplain,* to the effect that the court ought not to assume the control of partnership affairs unless some necessity for its doing so is manifest, adopting the language of Lord Eldon in saying: " I have frequently disavowed, as a principle of this court, that a receiver is to be appointed merely on the ground of a dissolution of partnership. There must be some breach of duty of a partner or of the contract of partnership."

And the same doctrine was acted upon by the same learned judge in *Wilson* v. *Fitchter, 3 Stock. 71*, where he disapproves of two decisions of Chancellor Walworth, in New York, which held the other way.

This principle of action was adopted by Chancellor Green, in *Cox* v. *Peters, 2 Beas. 39.* That case resembles this in that the charge was, as here, a violation on the part of the defendant of the articles of partnership, and a combination to exclude the complainant from participation in the business of the firm and from receiving his share of the profits. Chancellor Green approves the cases just cited, decided by Chancellor Williamson, and then says : " But admitting the existence of the general rule, it is based on the principle that each partner has an equal right to the possession and control of the partnership effects and business. But, by the articles of partnership between these parties, the whole capital was to be advanced by Peters, the business to be conducted in his name and owned alone by him. The entire capital was in fact advanced by him, and whatever may be the rights or claims of creditors as against the property, as between the partners themselves the entire capital advanced, after the payment of debts, belongs to Peters. The complainant has no interest in the property upon the dissolution of the firm beyond

his share of the profits.  Under such circumstances, where there is no suggestion of insolvency or irresponsibility, and no proof of fraud, there can be no equity in wresting the management of the property from the hands of the real owner and placing it in the hands of a receiver.  As the case now stands, there is no necessity for the appointment of a receiver, and no reason for the continuance of the injunction upon that ground.  The partnership still continues, and, upon the case made by the answer, there is no ground for the interference of the court with the management of the concerns of the partnership by the partners themselves."

The considerations which prevailed in the cases just cited apply and must prevail here.

The complainant, as I have said, failed to show fraud or actual mismanagement by the defendant, or any disposition to exclude the complainant from a full knowledge of the various transactions under the agreement.  I think, also, that he has failed to show a disposition on the defendant's part to let the business run down and become unprofitable.  Complainant is clearly entitled to have an account taken in this court, and there the charges of extravagance in paying salaries and other expenses may be examined, at his risk, of course, as to costs, if he does not succeed in varying the result.  But the right to an account does not include the right to stop the enterprise by a receiver.

I will advise that the order to show cause be dissolved and the motion denied, with costs.