J. VERNON CALKINS

*v.*

WILLIAM P. WORTH.

*Opinion filed April 17, 1905.*

1. FRAUD—*when a fiduciary relation exists between tenants in common.* Where one of two tenants in common in property which they bought for re-sale undertakes to negotiate the sale of the entire property to a stranger, a fiduciary relation arises between the tenants in common requiring honesty and fair dealing, which precludes the one negotiating the sale from taking advantage of a concealment from the other of the actual consideration paid, thereby securing more than his share of the proceeds.

2. PLEADING—*when erroneous conclusion of pleader does not affect right to relief.* If the facts alleged in a bill charging fraud warrant the relief prayed and are supported by the evidence, the fact that the pleader has drawn an erroneous conclusion as to the relation between the parties growing out of the facts does not preclude relief nor justify the objection of a variance between the allegations and the proof.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. M. KAVANAGH, Judge, presiding.

This appeal is prosecuted by the appellant, J. Vernon Calkins, to reverse the judgment of the Appellate Court for the First District which affirmed the decree of the superior court of Cook county rendered against appellant and in favor of appellee, William P. Worth, finding that said Worth is entitled to $1100 of a fund of $2200 on deposit in the Northern Trust Company, being the proceeds of a principal note for $2000 and two $50 interest notes, in which Worth claimed that he was entitled to a one-half interest. The decree is based upon the finding of the court that appellant, in and about the sale of an improved piece of real estate, knowingly and intentionally misrepresented the actual considera-

tion paid by the vendee for the property, whereby appellee, as joint owner of the property, was defrauded out of one-half part of said sum of $2200.

The bill alleges, and the answer of appellant admits, that in the month of March, 1901, the parties to this appeal became the owners of the real estate, an apartment building described in the bill, each of them paying half of the purchase price and each of them owning one-half of said real estate, and that from the time of the purchase of said real estate until the same was disposed of, said complainant and defendant were to, and did, share equally the profits and expenses of said real estate. The bill also alleges that the title to the property was taken in appellee, and that thereafter appellee, at the request of appellant, deeded an undivided one-half interest to one Genevieve Frances York, who held the same for the use and benefit of appellant. The bill further sets forth that about November 1, 1901, appellant informed appellee that he had an offer for the property of $17,000, $6500 of which was to be paid by assuming an encumbrance, $2000 in cash and the balance in thirteen unimproved lots in Morgan Park; that on or about the 8th of November appellant presented to appellee for signature a written contract with one Caroline S. McEntee for the sale of his one-half interest, which contract was executed, and that about the same time a contract, also drawn by appellant, was executed by Genevieve Frances York conveying to the said Caroline S. McEntee one-half interest in the property, the title to which she held in trust for appellant, as above stated. The bill further alleges, in substance, that complainant recently learned that he had been deceived by the defendant, Calkins, in that the purchase price of said property was $2000 in excess of that which he (Calkins) had represented it to be, for which $2000 a note secured by a trust deed upon the whole property had been executed by the purchaser and delivered to said Calkins. It is further alleged in the ninth clause of the

bill "that the said note falls due on the 8th of November, 1903, that it is still owned by the defendant, J. Vernon Calkins, and would be paid and taken up by the maker at the time it falls due, and that your orator is equitably and justly entitled to one-half of the proceeds of said note," etc.

The defendant (appellant here) in his answer admitted the joint ownership of the property, that they each advanced one-half the purchase price and each became half owner of said real estate, and that the said Genevieve Frances York received a conveyance of an undivided one-half interest for the use and benefit of said defendant, and the answer further admits that "from the time of the purchase of said real estate until the time the same was disposed of, said complainant and defendant shared equally the proceeds and expenses of said real estate." It is further admitted by the answer that said Caroline S. McEntee afterwards became the owner of the property, and that she paid for said property a certain consideration, but denies the making of the contracts as alleged in the bill, and that he deceived said complainant and falsely and fraudulently stated or represented or led complainant to believe that the consideration of the purchase of said building by said Caroline S. McEntee was other than it was, and denies all allegations of fraud and deception. Further answering, the defendant denies the allegations of the ninth clause of said bill, and each of them, and denies that he was the owner of said note or had any interest therein on the 8th day of November, 1903. Subsequently one August L. Johnson, father-in-law of appellant, was permitted to intervene in said suit. By his sworn petition he alleges that he is the owner of said note described in said bill of complaint; that said note, by its terms, became due on the 8th day of November, 1903, and that he was the owner of said note before maturity, for a valuable consideration in that behalf paid to the said J. Vernon Calkins, and that neither said complainant nor said J. Vernon Calkins had any interest whatsoever in said note.

The decree of the superior court, upon the pleadings, oral and documentary proof taken in open court, found the equities with the complainant, and that the parties hereto were joint and equal owners of the property, and that defendant had fraudulently deceived complainant, having led him to believe that the consideration for the sale of the property was $2000 less than it was in fact, and that the alleged transfer of said note by the defendant to Johnson was not in good faith, and that Johnson obtained no title to said note, or the proceeds thereof, as against complainant; that the amount of said note, together with unpaid interest, having been paid into the Northern Trust Company Bank, complainant was entitled to receive of the same the sum of $1100. Appellant and Johnson jointly and severally prayed appeals, the appeal being perfected by Calkins only.

SAMUEL B. KING, for appellant.

BULKLEY, GRAY & MORE, for appellee.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

The only evidence introduced in the case of any importance was that of appellee upon his own behalf and appellant in his behalf, together with the separate contract for the sale of the property by appellee and appellant to Mrs. McEntee. Appellant's property stood of record in the name of Genevieve Frances York, and the contract was accordingly made with her. Both contracts were entered into the same day and each was drawn by appellant, and were identical in all respects in reference to the terms, etc., except appellant's contract contained the following additional clause: "And said second party hereto shall execute her promissory note for the sum of $2000, due in two years from date closing this negotiation, with interest at the rate of five per cent per annum, evidenced by four coupon interest notes, due six, twelve,

215—6

eighteen and twenty-four months, respectively, after date, said $2000 note and interest to be secured by a trust deed on the property hereby agreed to be conveyed by Genevieve Frances York at 420 Forty-first street, the said trust deed to be a second lien upon said premises, subject only to the present encumbrance of $6500; interest on $2000 trust deed to be computed from date of closing this contract."

Appellant's contention is that he purchased of appellee his interest in the property, and was therefore not compelled to account for the $2000 note; but in this contention he is not sustained by even his own evidence, and the contracts were both made by the appellant and the appellee to the purchaser. The appellant's testimony in reference to the transaction was, in part, as follows: "About that same time, from my advertisement, Mr. McEntee came in and said he had some property in Morgan Park which he would like to trade and put in some cash. We got to figuring on the value of his property, and I asked him $3000 difference, and told him that this property had an encumbrance of $9000, expecting then to record this $2500 second mortgage, which made $9000 with the $6500 first. He said he would go down and look at the flat-building and then would come in and let me know. He came in and offered me $1800 cash difference and agreed to assume the $9000 encumbrance and give me one hundred and fifty feet in Morgan Park about a block from the depot, which he represented was worth $6000." Appellant wrote appellee a postal card, as follows:

"*Nov. 6, 1901.*

"Got an offer of $1800 difference, and I put them off, and tried to reach you at Oakley, also Austin, but could not catch you. I pretended I had seen you, and offered to trade at $2000, which I think may be accepted, as he wants to leave Thursday. Now, bring in all papers and deeds at once, so I can draw contract, and we will go down and look at the vacant. Call me up and come down with descriptions and papers.   Calkins."

Appellant further testified that in response to this postal card, and telephone message to the same effect, the appellee

called upon appellant. "He (Worth) came in and I told him that I had a proposition on the property, and asked him which he would like to do,—whether he would like to have $2000 in cash, or whether he would like to have $1000 in cash and one-half of some real estate that was offered in Morgan Park, and represented to be worth $8000."

It will be seen from appellant's own evidence that in stating to appellee what the offer was that he had received for the property, he concealed the fact, if it was the fact, that the buyer agreed to assume a $9000 encumbrance, when in truth the property was only encumbered for $6500, but represented that the buyer was putting in vacant property at the valuation of $8000, when, as a matter of fact, it was being put in at $6000. Nothing is said in the postal card nor in this conversation that would lead appellee to believe that he was selling to appellant. It is true that some time previous to this appellant and appellee did have a conversation in which appellee agreed to sell to appellant, but nothing ever came of the proposition. It can only be inferred from the above evidence that the trade was simply made by appellant for himself and appellee, and by appellant's misrepresentations he obtained for his own benefit the note of the buyer, secured by a trust deed on the property, amounting to $2000, as a part of the trade. The evidence further discloses that there were thirteen lots obtained in Morgan Park in the trade. Appellant received seven and one-half of these and appellee five and one-half. Appellee says he allowed appellant one of these lots extra for his trouble and commission in making the trade. This difference is accounted for by appellant by stating one part of the lots was worth more than the other, and that the five and one-half lots received by appellee were worth as much as appellant's seven and one-half. At any rate, appellant obtained two more lots than appellee, as shown by the deeds, and the $2000 note.

The trial court found and recited in its decree that Calkins concealed the knowledge of said $2000, and the note

evidencing the same, from the complainant, and falsely and fraudulently deceived complainant, and led him to believe that the consideration was $17,000, $6500 of which was to be paid by assuming an encumbrance thereupon for that amount, $2000 in cash, and the balance by conveying thirteen unimproved lots in Morgan Park, exclusive of the said $2000, and that complainant in equity is the owner of an undivided one-half of said $2000 note. This decree has been sustained by the judgment of the Appellate Court, and we think there is evidence sufficient to support the decree. The trial court saw and heard the witnesses and was better capable of judging as to the weight to be given their evidence, and unless the decree is manifestly against the weight of the evidence the decree will not be disturbed where there is a conflict in the evidence.

It is contended by appellant that the parties were mere tenants in common, and that a fiduciary relation does not arise, in law, from such ownership. With the proposition of law we do not take issue, but we are doubtful if appellant is sustained by the evidence in the contention of fact. While, ordinarily, the mere purchase of a tract of land by two persons creates the relation of tenants in common only, and while, as a general rule, the embarking in a single transaction of that nature does not create a partnership, we have no doubt that the parties may have a transaction in real estate the nature of which will raise all the duties and obligations of partners whatever the relation may be termed in law, whether that of partnership or agency. The property in question was a flat-building, which was purchased for resale and not as an investment. The parties were to, and did, equally bear the expense of repairs and the conduct of the business of managing and renting apartments in the flat until a purchaser should be found. Appellant was in debt and judgments stood against him, and his name did not appear in the title, which in the first instance was taken to appellee, who made a mortgage for the payment of part of the pur-

chase price, and so held the property until, at the request
of appellant, a half-interest was conveyed to Mrs. York for
the benefit and use of appellant. The owners, as related to
their separate interests, could doubtless deal with each other
as strangers. One could sell to the other at such price as he
deemed satisfactory,—and thus far the rule contended for
by appellant is sound and could be applied; and within that
rule each could sell to a stranger on terms that suited him,
and the other could not complain. But when either at-
tempted to sell or began negotiations for the sale of the
whole property,—not only his own, but the share of the
other,—to a stranger, then the law raised a relation of trust
between them that required honesty and fair dealing, and at
all events precluded the idea of actual misrepresentation as
to any material matter relating to the proposed sale. That
appellant did willfully misrepresent the price at which the
property was to be sold he admits, and says the reason he
did so was, he feared appellee would not stand by some pre-
vious offer he had made to dispose of his interest for $2000,
which appellant says was the real transaction as between ap-
pellee and himself, save that in the largeness of his heart he
gave appellee the option to take half of the lots, which Mc-
Entee and others estimated as worth $6000 and which the
appellant regarded as well worth $4000. According to the
appellant's statement he was still willing to give the ap-
pellee $1000 more for his share than he had offered to sell
for, and was concealing from him all knowledge of the ex-
tra $2000 that he (appellant) was to get by the second mort-
gage, so that the appellee might not become dissatisfied and
refuse to sell. The story of appellant is neither plausible nor
does it bear the impress of truth, but shows a readiness, by
means the law condemns, to take advantage of one who
trusted and rewarded him, in a transaction relating to their
common property. In that matter they were not dealing
at arm's length. The proposition to purchase was made to
appellant and through him to appellee. Appellee did not see

and had no communication whatever with the purchaser. He did as he had a right to do—rely on the truthfulness and honesty of appellant; and because he did so he is not, as against appellant, deprived of his right to share in the proceeds of the sale as though no fraud had been practiced.

The authorities cited by appellant upon the proposition that the purchaser, though a tenant in common, is not called upon to state all he knows or disclose matters which the vendor might by reasonable. investigation ascertain, state correct principles of law but are not applicable to this case. They ignore the fiduciary relation shown here to exist.

The bill does not rest wholly upon the charge of partnership, which it is said the evidence does not establish. In fact, it is not, in terms, charged there was a partnership. It alleges the facts as they were established and found by the chancellor, and though, among other things, it is alleged they bought as partners, much more is alleged; and if the facts alleged warrant the relief and are supported by the evidence, then the mere erroneous conclusion of the pleader, if such there is, as to what relation was created under the facts, would not preclude the granting of the relief or fall within the objection of variance between the allegations and the proof. It is not incumbent upon appellee to establish a partnership with appellant to recover, but it is sufficient to show a fiduciary relation existed between them and establish fraud as alleged in the bill. *Bunn* v. *Schnellbacher,* 163 Ill. 328.

The decree was warranted by the findings of fact made by the chancellor, and we think it should not be disturbed. The judgment of the Appellate Court affirming the decree of the circuit court will accordingly be affirmed.

*Judgment affirmed.*