HARVEY F. CARR, receiver of West Jersey Mortgage Company,

*v.*

STERLING REALTY CORPORATION and VICTOR CORPORATION.

[Submitted October 15th, 1922. Determined November 9th, 1922.]

The defendant Sterling Realty Corporation, being indebted to complainant as receiver of the West Jersey Mortgage Company, entered into an agreement with the receiver, in which, among other conditions, agreed as follows: "The Sterling Realty Corporation hereby grants, conveys and assigns to the receiver an interest in the net profits of * * * real and personal property, * * *, as well as to the net proceeds of a sale of the real and personal property. Such interest hereby granted, conveyed and assigned to the receiver is a right to participate to the extent of forty three hundred and fortieths of the net profits and in the net proceeds of a sale of said real estate and personal property."—*Held* (1), said agreement did not convey a fee in an undivided forty three hundred and fortieths of said real estate; (2) that in the absence of fraud or inadequacy of price, the Sterling Realty Corporation had not divested itself of the power to convey; (3) evidence did not prove fraud or that the consideration was inadequate.

On bill, answer and proofs.

*Messrs. Bleakly & Stockwell,* for the complainant.

*Mr. Clarence L. Cole,* for the defendant Sterling Realty Corporation.

*Messrs. Cassman & Gottleib,* for the defendant Victor Corporation.

INGERSOLL, V. C.

The complainant is the receiver of the West Jersey Mortgage Company. In March of 1921, the defendant the Sterling Realty Corporation was the owner of two certain properties at the ocean end of Tennessee avenue in Atlantic City. The

property situated on the inland side of the boardwalk (a public street of the city) was known as the Alamac Hotel, consisted of a hotel of that name, with stores on the boardwalk level; the property oceanward of the boardwalk was known as Young's Ocean Pier.

The Sterling Realty Corporation was indebted to the complainant in an amount exceeding $125,000, which indebtedness was evidenced by a decree in this court in foreclosure proceedings instituted by the Guarantee Trust Company as trustee; after the payment of the trust company decree, amounting approximately to $511,000, the complainant was entitled to be paid a sum which, with interest, amounted to $37,755.78, and as the owner of bonds of said Sterling Realty Corporation, of the par value of $84,000, under a subsequent mortgage securing an issue of $170,000, upon which arrears of interest was due.

The said hotel and pier had under said decree been advertised for sale by the sheriff of Atlantic county, which sale had from time to time been adjourned.

The Sterling Realty Corporation had arranged to sell the Young's pier for the sum of $450,000 and to refinance the liens on the Alamac Hotel by placing a real estate and chattel mortgage for $500,000.

On March 24th, 1921, the Sterling Realty Corporation and Harvey F. Carr, receiver of West Jersey Mortgage Company, entered into an agreement in which, after recital of the above-stated facts, and a clause stating it to be to the material advantage of the parties thereto that the mortgaged premises should not be sold under the decree of foreclosure, and for and in consideration of one dollar each to the other paid, the Sterling agreed—

(2) That it would "cause the decree of the Guarantee Trust Company, trustee, to be paid and satisfied."

(3) To sell the pier property for $450,000.

(4) *a.* To create a new mortgage of $500,000 on the Alamac Hotel and chattels thereon, payable in ten years, and to pay all existing mortgage liens upon said premises.

*b.* To execute to the receiver a bond and mortgage of $33,000, payable within three years and in installments of at least $5,000 a year.

*c.* $42,000 participation in a bond issue of $85,750 secured by a mortgage to the Guarantee Trust Company, as trustee, on the hotel property, and

(*6*) "The Sterling Realty Corporation hereby grants, conveys and assigns to the receiver an interest in the net profits of the said real and personal property, after deducting all carrying charges, including repairs and necessary expenses in the management thereof, and any sums paid on account of the principal of the thirty-three thousand ($33,000) mortgage above referred to, as well as to the net proceeds of a sale of the real and personal property. Such interest hereby granted, conveyed and assigned to the receiver is a right to participate to the extent of forty three hundred and fortieths (40/340) of the net profits and in the net proceeds of a sale of said real and personal property; it being the intention of the parties that the rights of the receiver to share in the profits and proceeds of the sale of said property shall be the same as though the receiver was the holder of stock of the Sterling Realty Corporation of a par value of forty thousand ($40,000) dollars out of an issued capital stock of three hundred and forty thousand ($340,000) dollars."

Other covenants concerning taxes, &c., were also included.

The receiver agreed, in consideration thereof, to cancel his decree and to surrender to the Guarantee Trust Company, trustee, the bonds of $84,000. The agreement was duly proven and recorded in the clerk's office of Atlantic county.

On September 1st, 1921, the Sterling Realty Corporation entered into an agreement with the defendant Victor Corporation for the sale of said Alamac Hotel for the sum of $1,100,000, to be paid as follows: $50,000 in cash on signing of agreement; $500,000 by assuming the Guarantee Trust Company, as trustee, mortgage of $500,000; $400,000 purchase-money mortgage at any time within ten years, in installments of not less than $10,000 at interest bearing periods;

first payment on September 1st, 1923. Interest at six per cent.; $150,000 in cash on March 1st, 1922.

In accordance with this agreement, the sale was made to and the consideration paid by the defendant Victor Corporation. The receiver had given notice both to the Sterling Corporation and the Victor Corporation of his claim that such a conveyance could not be made without his consent.

The bill prays:

2. For an accounting of the receipts from the operation of the hotel.

3. For an accounting of the said sale.

4. For a decree setting the said conveyance aside.

5. For an injunction enjoining the Victor Corporation from conveying, mortgaging or disposing of said property.

7. For further relief.

The contention of the complainant is that by virtue of clause 6 of the agreement he acquired an equitable title or estate in all of said property, real and personal, and that the defendant Sterling Realty Corporation, holding the legal title to said property, became and continued to be trustees for complainant in respect thereof. That the beneficial interest acquired by the receiver was co-extensive with the Alamac Hotel property and equal as to rights with the Sterling Realty Corporation itself, and that without his consent no conveyance could be made by the Sterling Realty Corporation of the said beneficial interest, which was forty-three hundred and fortieths.

It will be noticed that clause 6 referred to combined two objects:

1. An interest in net profits.

2. An interest to the net proceeds of a sale and repeats these phrases three times. It must be conceded that a sale was contemplated before a distribution could be made and that unless the terms of this agreement resulted in a conveyance of an undivided forty-three hundred and fortieths interest in said land and chattels by the Sterling Realty Corporation to the receiver, the power of sale remained in the Sterling corporation.

There is nothing in the agreement or in the evidence before the court that the Sterling Realty Corporation divested itself of the right to operate the hotel (which is admitted by the complainant), or the power of ownership and the rights to convey, provided it paid to the complainant the forty-three hundred and fortieths of the net profits of the operation and the forty-three hundred and fortieths of the net proceeds of a sale; providing, always, it acted honestly and without fraud as to the interest of the complainant.

In *Braddock* v. *Hinchman, 78 N. J. Eq. 270,* the facts created a joint adventure, and not an "equitable lien," and the effect of the agreement was to give complainant a potential interest in the land, enforceable in equity.

*Ross* v. *Stevens, 45 N. J. Eq. 231,* was also a case of joint adventure. The complainant was entitled to one-half of the profits made by the defendant on the sale of land. No question was raised as to the power of defendant to make sale. He was compelled to account.

*Warwick* v. *Stockton, 55 N. J. Eq. 61.* Joint adventure in manufacture and sale of a patented article. The defendant was held to continue to be the legal and equitable owner of the whole plant and business, and had the full control thereof, subject to the duty to account.

Counsel has not called attention to any case in point in our state. *Braddock* v. *Hinchman, supra,* cited, does not involve the point at issue.

In *Jones* v. *Davis, 48 N. J. Eq. 493,* Davis purchased a hotel property in Atlantic City and executed a declaration that he held the same, subject to the interest of Jones, "the interest of Jones was a one-half interest in the net profits from sale of said property." Vice-Chancellor Green said: "Here is a distinct recognition of Jones' interest in the property and that Davis holds the title subject to such interest. * * * That they were not partners requires no argument or citation of authority. Neither did Jones' interest in the venture prevent Davis' conveyance in good faith of any portion of the property." An accounting was had.

In Pennsylvania, in 1890, Mr. Justice McCullum, in the
case of *Hentz* v. *Pennsylvania Company,* 134 *Pa. St. 343,* in
construing an agreement worded as follows:

"This agreement, between James J. Van Syckel, of Philadelphia, of
the first part, and Jacob Hentz, of Philadelphia, of the second part,
witnesseth, that for and in consideration of the sum of one dollar paid
by the said party of the second part to the said party of the first part,
the receipt of which is hereby acknowledged by the said party of the
first part, the aforesaid party of the first part agrees to pay over to
the said party of the second part one-fourth of the profits which he
the said party of the first part may at any time realize by the sale
of or by the revenue arising from his undivided half part of a certain
tract of land situated in Shippen township, McKean county, State of
Pennsylvania, being in warrant 5,463 and containing six hundred
acres, and this day purchased by the said party of the first part, from
James Duffy, of Marietta, Lancaster county, state aforesaid; the said
party of the second part hereby agreeing to pay one-fourth of the loss,
if any, which may arise from the sale of said tract of land. The
cost of the aforesaid undivided half part of said tract of land being
forty-five hundred dollars,"

said: "It was not the intention of the parties to this agree-
ment that Hentz should become the owner of one-fourth of
the undivided one-half which Van Syckel held, but that he
should acquire the right to demand and receive one-fourth of
the profits which Van Syckel might realize from the use and
sale of the land," and allowed an accounting.

In *Howard* v. *Holmes (Court of Appeals, D. of C.,* de-
cided June 5th, 1922*), 281 Fed. Rep. 597,* when one joint
owner of property conveyed his interest in the property to
her co-owner, an agreement that if the purchaser should
thereafter sell the property at a price in excess of the ap-
praised valuation, he would share with the vendor the profit
resulting therefrom, does not make the conveyance a mort-
gage, creating a right to foreclose and that the right of the co-
tenant depends upon the will of the purchaser, since the time
and terms of the sale reside in his discretion, and equity will
not compel the purchaser to sell and share the profits unless
the available price is such that the refusal to sell would shock
the conscience of the court.

The receiver has, ever since the execution of the agreement, insisted that the effect thereof was a conveyance to him of forty-three hundred and fortieths interest in the hotel property.

What we have to consider is this, what under the contract between the parties are the rights which that contract has, *inter se,* given to one against the other? The wording of the agreement does not sustain the contention of the complainant. It was not the intention of the parties as expressed in the agreement that he should become the owner of that undivided interest; but that he should acquire the right to receive forty-three hundred and fortieths of the net profits and forty-three hundred and fortieths of the net proceeds of the sale.

The result is that the Sterling corporation had the power to convey the lands and premises conveyed to the Victor Corporation without the consent or joinder of the complainant, unless there should be found fraud in connection therewith, or unless the price and terms were inequitable to the complainant.

While it is true that the receiver did not promptly receive information asked for by him concerning the conduct of the affairs of the company, that the receiver notified the company he had an offer of a greater amount than the Victor Corporation was to pay, no fraud has been shown.

Evidence was produced to show that after the sale to the Victor Corporation the rentals of the stores composing the front of the hotel property were greatly increased, in some cases one hundred or more per cent.; it was also shown that the condition of the hotel (the rental of which composed a very large proportion of the rental value of the property) was such that it could not be rented at all without an expenditure for repairs of approximately $200,000, which could not have been made by the Sterling Realty Corporation.

There can be no doubt that the parties must act with the utmost good faith toward each other and must conduct it (the business) with an honest and faithful endeavor to make it successful and profitable (*Warwick* v. *Stockton, supra*) and

owe to each other the utmost good faith and most scrupulous honesty.

While it might be said that the terms of the sale as to length of time the mortgage should run were unreasonable as to the complainant, it was stated in court by the defendant that an accounting of the proceeds of the sale would be made by the defendant in cash, and it is unnecessary to determine this point.

There is no proof of fraud on the part of the defendant Sterling Realty Corporation. The price received was not grossly inadequate or unfair and unreasonable.

The defendant Sterling Realty Corporation must account to the complainant for the net profits of the hotel and for the net proceeds of the sale.

No reference will be made at this time however. The defendant Sterling Realty Corporation will render within ten days to the complainant the accounting above referred to and the complainant may, within ten days thereafter, file exceptions thereto, and it will then be determined whether a reference need be made.