By consent of counsel, two separate actions brought by complainant, one against George B. Spearin, Incorporated, et al., and the other against F.H. McGraw Company et al. (hereinafter referred to as Spearin and McGraw, respectively), involving similar facts, were heard and tried together; the relief sought in each being a decree setting aside the assignment therein challenged and adjudging the moneys paid and/or received thereunder to be due and owing to complainant as receiver of Terminal Warehouses, Incorporated (hereinafter referred to as Terminal).
Without dispute, the testimony discloses these essential facts and circumstances: On February 6th, 1930, under circumstances *Page 171 
hereinafter adverted to, a so-called fixed fee construction contract was entered into between Terminal (formerly Terminal Development Company) and the Pennsylvania Railroad Company (hereinafter referred to as railroad company) for the demolition of the latter's "Pier D" at Jersey City, the construction of a new one in its place, the removal of the piles in the then existing dock and the performance of the dredging and engineering work necessary in connection therewith.
Pursuant to a prior arrangement between them, Terminal shortly thereafter apportioned and assigned this work as follows: to defendant Spearin, the removal of the old docks and old piles, the sinking of the new piles, the construction of the new dock, the installation of the hardware and the performance of the excavating, concrete and steel reinforcement work; to defendant McGraw, the superintending, accounting, field clerk, field engineering, communications, masonry, concrete, finish, carpentry, finish hardware, finish cement and finish plaster work. Each of said defendants, in turn, undertook and agreed to perform the work thus allocated and assigned to it.
Although all of the work required by its said contract was completed in September, 1931, the railroad company refused to honor the requisition for final payment of $28,971.21 which Terminal shortly thereafter made upon it. Its position undoubtedly was actuated merely by its desire to withhold from Terminal, of which William J. McMillan was president, any money which in turn might directly or indirectly be used by him in financing the controversy then existing between it (the railroad company) and Penn Dock Warehouse Company of which he also was president. By reason thereof McGraw and Spearin were unable to receive the sums of $10,137.57, $13,613.35 and $1,567.62 due them as their respective shares of that payment. Upon their assuring it that neither of them, the Pier "D" contract excepted, was in anywise connected with Terminal, the railroad company paid said sums to them respectively, but only after each had first procured and delivered to it a separate assignment from Terminal for each of said amounts. *Page 172 
It is these assignments, dated February 15th and March 1st, 1932, respectively, that complainant — based upon a decree of this court dated March 8th, 1932, adjudicating Terminal insolvent and appointing his predecessor as its receiver — argues (a) were made by Terminal while insolvent or in contemplation of insolvency, (b) effected an unlawful preference in favor of McGraw and Spearin over Terminal's other creditors, and (c) are, under section 64 of the General Corporation act, utterly null and void as against those creditors, citing Hoagland v. UnitedStates Trust Co., 110 N.J. Eq. 489; Nugent v. Lindsley,97 N.J. Law 268; First National Bank of Lyndhurst v. Bicachi Smith,106 N.J. Eq. 333. That contention, however, presupposes and assumes the existence of all the essential facts upon which it is based.
Aside from the file in the case of Henry Janssen SecuritiesCorp. v. Terminal Warehouses, Inc. (Docket 88-614), and the above mentioned decree of insolvency therein entered, complainant produced no relevant or competent evidence tending to establish the insolvency of Terminal on the dates of those assignments. Tested by the principle that insolvency once established is presumed to continue forward, but not backward, from the date of its establishment (Glauberman v. Bergenline Trust Co.,108 N.J. Eq. 531; Martin v. Gwynn, 90 Ark. 44; 117 S.W. Rep. 754;Nevers v. Hack, 138 Ind. 260; 37 N.E. Rep. 791; Dinius v.Lahr, 36 Ind. A. 425; 74 N.E. Rep. 1033; Oklahoma National Bank
v. Cobb, 52 Okla. 654; 153 Pac. Rep. 134), it may be well questioned whether that file and decree constitute sufficient competent proof of Terminal's insolvency on the dates of the assignments in question. Be that as it may, it is unnecessary to pass upon that question; since the conclusions hereinafter reached are based upon other grounds.
Complainant asserts that McGraw and Spearin are mere creditors of Terminal. In support of this assertion, he points to no evidence other than the contract between the railroad company and Terminal. He lays particular stress upon that provision thereof whereby all payments thereunder are to be made by the railroad company to Terminal. From this alone *Page 173 
he proceeds to intriguingly spell out and deduce a relationship of debtor and creditor so between Terminal on the one side and McGraw and Spearin on the other. That reasoning, however, overlooks and completely ignores the very arrangements and agreements made between Terminal, McGraw and Spearin themselves, pursuant to which that contract was made and executed in its present form.
It is entirely uncontroverted that as early as January, 1929, Terminal, McGraw and Spearin, by their respective presidents, discussed the possibility of their jointly procuring the contract from the railroad company for its then contemplated Pier "D" construction project. Subsequently, at a conference on December 16th, 1929, Terminal's president apprised the others of the railroad company's willingness to award a contract for that work and inquired of each whether their respective companies would join with his in undertaking and performing it; each of them to finance such part thereof as would be apportioned and allocated to it and for which each was to be reimbursed out of the contract proceeds in addition to receiving one-third of the entire contract fee. With that arrangement all were in accord. In January, 1930, they were informed by the railroad company's engineer and representative, that, for matters of convenience to itself, it couldn't enter into a contract with the three of them jointly, but would do so with whichever one of them they selected, who then, in turn, could apportion the work between them, receive the payments for all and make distribution thereof amongst themselves in accordance with their own independent arrangements. Terminal having been selected for this purpose, the contract was made between it and the railroad company, paragraph XII of which significantly reads:
"It is understood and agreed that the actual expenditures incurred in the cost of the work for the pier construction proper are to be those of George B. Spearin, Incorporated, and for the shed construction those of F.H. McGraw Company, both of New York, N Y, to whom it is the intention of the `contractor' to assignthese items of work. All payments by the `company' on account of the work to be performed under this agreement are to be made to the `Contractor.'" *Page 174 
Pursuant to and in accordance with their previous arrangements and agreement, Terminal, McGraw and Spearin thereafter on March 28th, 1930, entered into an agreement, the pertinent provisions of which are:
"F.H. McGraw Co., George B. Spearin, Inc. Gentlemen:
We are handing you herewith a copy of executed contract dated February 6th, between the Pennsylvania Railroad Company and the Terminal Development Company, covering work to be performed at Pier "D," Jersey City, N.J., and in conformity with our verbalagreement and under the provisions of said contract, we are hereby assigning to F.H. McGraw Co., certain parts of the work to be performed under this contract, and certain other parts to Geo. B. Spearin, Inc., all as outlined herewith:
F.H. McGraw Co.
Superintending, accounting, mason work, contact with P.R. R. field engineering, field clerk, finished carpenter work and finished hardware, concrete work other than that done by Geo. B. Spearin, Inc., cement finish, plaster work.
Geo. B. Spearin, Inc.
Removing old dock, pulling old piles, new piles including fender piles, new dock; framing, bracing, carpentry, including wood roof, all hardware, excavating, concrete, including forms of docks and fire walls, labor on reinforcing steel.
Any other additional work, not covered in the above items, shall be done by the Terminal Development Co., unless assigned by them, for the benefit of the work to Geo. B. Spearin, Inc., or F.H. McGraw Co.
It is hereby agreed that payments received by the Terminal Development Co., as reimbursement of the actual expenditures incurred in the cost of the work, including equipment rentals, are to be immediately paid over in full to the respective companies to which they are due.
It is hereby agreed that the expense of financing the work which is performed by each one of the three parties to this agreement shall be borne individually by such party.
These assignments are made with the understanding that the fee to be received by F.H. McGraw Co. for its services under this contract shall be one-third (1/3) of the total fee received by the Terminal Development Co., from the Pennsylvania Railroad Co., under the said contract, regardless of whether the work performed by F.H. McGraw Co., amounts to more or less than one-third (1/3) of the total work done under the contract, and that, similarly Geo. B. Spearin, Inc., is to receive for its services one-third (1/3) of the total fee, leaving one-third (1/3) of said fee to be retained by the Terminal Development Co.
 * * * * * * * *Page 175 
The acceptance of this letter by F.H. McGraw Co., and Geo. B. Spearin, Inc., will constitute a binding agreement between us.
TERMINAL DEVELOPMENT CO., R.S. McElroy, Vice-President. Accepted:
 F.H. McGraw Company F.H. McGraw
Accepted:
 George B. Spearin, Inc. T.H. Preston."
It is now well settled that the relationship of joint adventurers need not necessarily be express but may be implied from the agreements of the parties, which, aside from the usual requisites as to form and validity applicable to contracts in general, need assume no particular form of expression or formality of execution. Jermyn v. Searing, 225 N.Y. 525;122 N.E. Rep. 706; Jackson v. Hooper, 76 N.J. Eq. 185. And so here the relationship, as well as the relative rights and duties, of Terminal, McGraw and Spearin, inter sese, are defined and governed not by the former's contract with the railroad company, but by the arrangements and agreement made between themselves with respect thereto. As manifested thereby, their unquestionable intent was to jointly share in said contract with railroad company, notwithstanding the fact that it was to be taken and made, for reasons heretofore indicated, in the name of Terminal alone, and that with respect to said enterprise Spearin and McGraw were to be co-adventurers with rather than creditors of Terminal. Of this, the following provisions of their own agreement of March 28th, 1930, furnishes unquestionable recognition and incontrovertible evidence.
"* * * payments received by Terminal Development Co., as reimbursement of the actual expenditures incurred in the cost of the work, including equipment rentals, are to be immediatelypaid over in full to the respective companies to which they aredue.
"These assignments are made with the understanding that the fee to be received by F.H. McGraw Co., for its services under this contract shall be one-third (1/3) of the total fee received by the Terminal Development Co., from the Pennsylvania Railroad Co., under said contract, regardless of whether the work performed by *Page 176 
F.H. McGraw Co., amounts to more or less than one-third (1/3) of the total work done under the contract, and that similarly, George B. Spearin, Inc., is to receive for its services one-third (1/3) of the total fee, leaving one-third (1/3) of said fee to be retained by the Terminal Development Co."
Under these facts and circumstances it cannot be gainsaid that the contract with the railroad company was held by Terminal in trust for the joint benefit of McGraw, Spearin and itself as co-adventurers, and subject to and in accordance with their respective interests therein. Rose v. Stevens, 45 N.J. Eq. 231; Warwick v. Stockton, 55 N.J. Eq. 61; Carr v. SterlingRealty Corp., 94 N.J. Eq. 128; affirmed, 95 N.J. Eq. 274; Jones
v. Davis, 48 N.J. Eq. 493; Calkins v. Worth, 215 Ill. 78;74 N.E. Rep. 81; Getty v. Devlin, 54 N.Y. 403; McCutcheon v.Smith, 173 Pa. 101; 33 Atl. Rep. 881; Irvine v. Campbell,121 Minn. 192; 141 N.W. Rep. 108; Barker v. White, 58 N.Y. 204;Cassidy v. Gould, 86 Okla. 217; 208 Pac. Rep. 780; Lind v.Webber, 36 Nev. 623; 134 Pac. Rep. 461; (note) 50 L.R.A.
(N.S.) 1046. Within the scope of their said common enterprise, Terminal, McGraw and Spearin stand in a fiduciary relation each to the other (Bowne v. Windsor, 106 N.J. Eq. 415; affirmed, 108 N.J. Eq. 274; Jackson v. Hooper, supra), and Terminal is bound to the exercise of the utmost good faith in dealing with that contract the sole subject of their joint venture, and required to strictly account to its co-adventurers for any and all moneys received by or payable to it thereunder.Cooperstein v. Shapiro, 118 N.J. Eq. 337; Selwyn Co. v.Waller, 212 N.Y. 507; 106 N.E. Rep. 321; Irvine v. Campbell,121 Minn. 192; 141 N.W. Rep. 108.
The equitable rights of McGraw and Spearin in and to that contract or its avails are in nowise impaired or diminished by reason of its having been taken in or being payable under the name of Terminal alone. In re McConnell, 197 Fed. Rep. 438;Johnson v. Farmers', c., State Bank, 152 Minn. 442;189 N.W. Rep. 583. That fact alone does not bestow or confer upon Terminal any equitable rights which otherwise would not have enured to it, nor does it subject the contract *Page 177 
or any of its yield or gains to any greater claim on the part of Terminal's individual creditors than that company's own interest therein can pay or satisfy. Putnam v. Burrill, 62 Me. 44;Drexel v. Pease, 129 N.Y. 96; 29 N.E. Rep. 241.
It is undeniable that McGraw and Spearin, under their agreement with Terminal, were each rightfully entitled to receive out of the requisitioned final payment the sums specified in and paid to them under the assignments in question. Had Terminal itself received that final payment, it would then have been in duty bound to promptly account to each of its co-adventurers for their respective shares thereof. Schantz v. Oakman, 163 N.Y. 148;57 N.E. Rep. 288; Marston v. Gould, 69 N.Y. 220; Hirshfield v.Weill, 121 Cal. 13; 53 Pac. Rep. 402; Kaufman v. Catzen, 81 W. Va. 1; 94 S.E. Rep. 388; L.R.A. (N.S.) 1918 B. 672, and upon default could in an appropriate action have been compelled to do so. Braddock v. Hinchman (Court of Errors and Appeals),78 N.J. Eq. 270; Ross v. Stevens, 45 N.J. Eq. 231; Warwick v.Stockton, 55 N.J. Eq. 61; Williams v. Henshaw, 11 Pick.
(Mass.) 79; Wendell v. Clark, 240 Mass. 562;134 N.E. Rep. 608; King v. Barnes, 109 N.Y. 267; 16 N.E. Rep. 332; Marston
v. Gould, supra; Tully v. Felton, 177 Pa. 344;36 Atl. Rep. 285.
Tested by the principles enunciated in those cases, the money received by McGraw and Spearin merely represented their respective shares of that final payment then being withheld from Terminal by the railroad company. In equity it was their own individual property. Although payable to Terminal, their respective shares of said payment constituted no part of its individual property or estate and were in nowise subject to the claims of Terminal's individual creditors. Terminal was but the instrumentality or agency through which their said shares was to be passed or paid to them.
Consequently, complainant cannot be heard to complain that said sums of money were by virtue of said assignments paid direct to McGraw and Spearin instead of through Terminal, *Page 178 
unless he first shows that they in consequence thereof received something belonging to Terminal or in addition to that which they would not otherwise have been entitled to receive; which needless to say he has failed to do. This, coupled with the fact that McGraw and Spearin were not creditors of but co-adventurers with Terminal, constitutes a full and irrefutable answer to complainant's contention that they, by means of the assignments in question, were enabled to secure an illegal preference over Terminal's other creditors, and likewise renders unnecessary the consideration of his contentions with respect to the alleged lack of authority on the part of the officers by whom said assignments were executed.
There still remains to be considered whether the assignments in question, as complainant insists, are null and void as against him. That such would be the fact, if they (a) had been executed by Terminal while insolvent or in contemplation of insolvency and (b) had actually affected a transfer or disposition of any of its assets or effects, must, in view of the express language of the sixty-fourth section of our General Corporation act, be conceded. But, as already indicated, there is no proof that any assets or effects belonging to Terminal was transferred by means or as a result of any of said assignments. On the contrary, the evidence is clear and undisputed that neither McGraw nor Spearin by reason of said assignments received anything other or more than their own respective shares of said final payment, the legal title to which, Terminal held in trust for them; and hence complainant's contention must fail.
Finally complainant contends that defendants William J. MacMillan and George Fink, Terminal's president and secretary respectively, by executing the assignments in question rendered themselves personally liable to its creditors in the amounts and to the extent thereof, under the cases of Turp v. Dickinson,100 N.J. Eq. 41, and Gill v. State Garage, Inc., 5 N.J. Mis.R. 759; 138 Atl. Rep. 193. Suffice it to point out that in each of the cited cases the directors were held personally liable merely because their challenged acts or conduct *Page 179 
resulted in an appropriation or distribution of their respective companies' property and assets — while their said companies were insolvent or contemplating insolvency — amongst some of the creditors to the exclusion of the others. Those, however, are not, as already indicated, the facts presented by the cases at bar. Personal liability, therefore, cannot be foisted upon either of these defendant officers.
In view of the conclusions already reached with respect to the assignments in question and the claims against the other defendants, the questions raised with respect to the liability of the railroad company have become moot, academic and, therefore, need not now be considered or passed upon.
There will be a decree in each case dismissing the bill therein filed. *Page 180